## Whitt v. Whitt, et al.

(Decided November 15, 1911.)

### Appeal from Magoffin Circuit Court.

1. Deed—Reformation of.—Where a person, by mistake, executes one of two deeds, when he intended to execute the other deed, the remedy is by a reformation of the deed so as to make it comply with the intention of the grantor, and not by a recission of the instrument.

2. Reformation of Deed.—A person who seeks to reform a deed on the ground of mistake, must establish, in the clearest and most satisfactory manner, that the alleged intention to which he desires it to be made conformable, continued concurrently in the minds of all the parties down to the time of its execution; and he also must be able to show exactly and precisely the form to which the deed ought to be brought.

3. Same.—In reforming a writing, a court of equity exercises one of its highest and most delicate functions, and it should not undertake so important a duty unless the evidence is full, clear and satisfactory.

4. Same—Conflicting Evidence.—Where the evidence is conflicting to such an extent that there is great difficulty in determining the weight of it, the finding of the chancellor will not be interfered with by the Court of Appeals.

JOHN H. GARDNER for appellant.

McGUIRE & McGUIRE and BYRD & HOWARD for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

On March 2nd, 1898, the appellant, Sarah Whitt, having concluded to divide a portion of her land between her four children, sent for Logan Patton, a Notary Public, to come to her house and prepare the deeds. Patton responded by writing four deeds which conveyed certain portions of the land to Oliver Whitt, Agglessa Whitt, Barbara Hall and W. C. ("Chat") Whitt, children of

Sarah Whitt. The deeds as originally drawn conveyed the respective interests to the grantees in fee simple, but the appellant contends that she objected to the deed thus drawn for "Chat" Whitt's share, and directed Patton to write a new deed limiting the estate to "Chat" Whitt for life, with a reversion to the grantor in case she survived "Chat" Whitt; and that in executing the deeds she, by mistake, executed the first deed drawn to "Chat" Whitt, instead of the last or corrected deed. The deed to "Chat" Whitt was recorded in August, 1899, and he took possession of the land thereunder and held it until his death in June, 1906. On August 7th, 1906, this suit was instituted by Lexington Whitt, the husband of Sarah Whitt, against the widow and two children of "Chat" Whitt, for the purpose of cancelling the deed of March 2, 1898, upon the ground that it was executed by mistake, but, as Sarah Whitt was the owner of the land, she, on February 19, 1908, nearly ten years after the execution of the deed, intervened herein and was substituted as plaintiff in the place of her husband, Lexington Whitt. In her petition she claims to be the owner of the land since the death of "Chat" Whitt, and that by the terms of the deed she executed, said land was to revert to her in the event that said "Chat" Whitt should die before his wife, the defendant Mollie Whitt, and that said deed which is of record, was not the deed that she intended to sign. She alleges that the deed that she intended to sign contained provisions that in the event that the said "Chat" Whitt died before she and her husband, Lexington Whitt, the land was to revert to the grantors, and that "Chat" Whitt was to pay her the sum of $100.00 to assist in the maintenance of appellant and her husband, for which a lien was retained on the land.

The original deed is before us, in a very dilapidated condition. After putting certain limitations upon the transfer of the property, which have become immaterial by reason of "Chat" Whitt's death, it contains this provision in an appropriate place in the body of the deed—

"If said party of the second part dies and has two heirs or more, said land goes to said heirs of "Chat" Whitt's body, and said tract of land is not to go to any one except the heirs of "Chat" Whitt's body, if there be two, and if said "Chat" Whitt dies before there are two legal heirs of his body, the land reverts back to the balance of the heirs that are alive."

The above quoted extract from the deed is erased by

lines drawn through and across the same, and in lieu thereof the deed as recorded has substituted, from a writing endorsed upon the back of the deed and in a different ink, this sentence:

"Do further agree that the said tract of land shall not be sold or taken from said party of the second part for any notes, mortgages or fines, or fine money that he is fined for at present, or in the future, or mortgages at any time."

The circuit judge dismissed plaintiff's petition; and upon the prayer of "Chat" Whitt's widow and children, restored the deed as it was originally written, by striking out the substituted paragraph last above quoted, and reinstating in the body of the deed the paragraph first above quoted, which gave a reversion of the land to the grantor in case "Chat" Whitt should die without leaving two heirs of his body. And "Chatt" Whitt having died leaving two heirs of his body, the Chancellor held that they took the title to the land under the deed as thus corrected.

The testimony is wholly irreconcilable. Several of the most important witnesses have testified three times. A large mass of testimony has been taken impeaching the character of witnesses who have testified as to the merits of the case, and also impeaching the characters of the impeaching witnesses. Although the petition prayed for a cancellation of the deed as written, the action is really one for a reformation of that deed, since appellant admits that she made, and intended to make, a deed conveying the property to her son, "Chat" Whitt. If that deed, through mistake, incorrectly represents her intended action, her remedy is by reformation and not by cancellation. But it is a well settled principle of equity that a person who seeks to reform a deed on the ground of mistake, must establish, in the clearest and most satisfactory manner, that the alleged intention to which he desires it to be made conformable, continued concurrently in the minds of all parties down to the time of its execution; and he also must be able to show exactly and precisely the form to which the deed ought to be brought. Bispham's Equity, sec. 409.

In reforming a writing a court of equity exercises one of its highest and most delicate functions, and it should not undertake so important a duty unless the evidence is full, clear and satisfactory. The appellant's testimony in this case is far from satisfactory, in any re-

spect; it fails utterly to approach the high standard above indicated.

Furthermore, there is some testimony to the effect that Sarah Whitt not only delivered this deed to her son, "Chat" Whitt, with full knowledge of its contents, but that her husband, Lexington Whitt, subsequently called at "Chat" Whitt's house for the purpose of reading the deed and that after he had read it he approved it as being correct.

Furthermore, the appellant having bought this land from Elisha Oney in 1892, she and her husband subsequently, in 1903, procured from W. P. Oney and wife a deed to "Chat" Whitt for a portion of the land in controversy.

The circuit judge evidently believed that "Chat" Whitt, or some one else, made the erasure in the deed after its execution, by drawing a line through a part of it, and substituting therefor the second clause heretofore quoted, which changed the tenor of the deed. In correcting the deed as he did, by restoring the stricken portion, it complies substantially with the language of Sarah Whitt's petition, in which she states her intention as to what the contents of the deed should be. The legal effect of the judgment correcting the deed is, in no substantial respect, different from the prayer of her petition.

Furthermore, the circuit judge was in a position to give the proper effect to the very conflicting testimony; and in such cases we are not inclined to interfere with his finding. Roberts v. Williams, 28 Ky. L. R. 1084; 90 S. W. 565; Layne v. Layne, 28 Ky. L. R. 810.

The judgment is affirmed.