## Cook, et al. v. Day, et al.

(Decided February 3, 1916.)

### Appeal from Knott Circuit Court.

Reformation of Instruments—Action to Reform Contract for Fraud or Mistake.—In order to reform an executed contract for fraud or mistake, the proofs of the fraud or mistake must be clear and convincing; a mere preponderance of evidence is not enough.

JOE HALL for appellant.

SMITH & COMBS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Affirming.

On April 25, 1913, the appellant, Seland Cook, entered into a written option contract with the appellee, May E. Day, for the sale of appellant's undivided one-sixth interest in two tracts of land which he had inherited from his father, Pierce Cook. One of these tracts was embraced in a 200-acre survey made by Pierce Cook in 1881; the other tract of 100 acres was embraced in a survey made by Pierce Cook in 1887.

The two tracts were described, in a general way, by giving the names of the adjacent landowners, for a boundary. By the terms of the contract appellee was to pay Cook $20.00 an acre for the land, and had thirty days in which to accept the proposition, the writing providing that if appellee failed within that time to tender the purchase price, the option should be at an end. Throughout the transaction the appellee, May E. Day, was represented by her husband, the appellee, K. J. Day.

Several of the Cook heirs, who were brothers and sisters of appellant, had conveyed their undivided interests in the two tracts to the Northern Coal & Coke Company, and that company had paid each of them for 39¾ acres, as being one-sixth of the land within the two surveys, after making due allowance for laps and interferences.

It was further agreed between the parties at the time the contract was made, that K. J. Day was to examine the records, and if he found that the company had paid the other heirs for 39¾ acres, he should also pay appellant for the same acreage.

At the same time the contract above mentioned was entered into, Cook and his wife executed to May E. Day another contract for the sale at $200.00 of the surface only of two small tracts of land on Gauley Branch, in which the coal and mineral rights had theretofore been sold.

The appellee made an initial payment of $5.00 for the two large surveys, and one dollar for the surface rights of the two tracts on Gauley Branch.

K. J. Day took both contracts in the name of his wife in order that he, as notary, might take the acknowledgments of the vendors, as a matter of convenience.

In examining the titles to the two larger surveys for the purpose of accepting the option, Day found only the survey of the 100-acre tract of record in Knott county, in the name of Pierce Cook. K. J. Day thereupon wrote to Seland Cook to that effect, and asked him to send Day a copy of the two surveys taken in the name of his father, Pierce Cook. Seland Cook sent Day a copy of the 100-acre survey, and told him he could get a copy of the 200-acre survey from the Land Office at Frankfort. But, in answer to an inquiry to that effect, the State Auditor replied that he was unable to locate the 200-acre survey or patent in Knott county from the records in his office.

This confusion arose from the fact that Day was laboring under the impression that the Pierce Cook 200-acre survey was also a Knott county survey; and while he was at work in the county court clerk's office examining the title, George Cook, an uncle of appellant, told Day that there was only one survey made in the name of his brother, Pierce Cook, and that was the 100-acre survey which he, as chain carrier, helped to make. George Cook also told K. J. Day that the 100-acre survey embraced the 39¾ acres which Seland Cook had contracted to sell to Mrs. Day.

By this time appellee's option had expired; but a short time thereafter Day received a letter from appellant, in which appellant stated he was still willing to trade if appellee would give him $1,000.00 instead of $995.00, and allow Cook to except three-quarters of an acre, thus leaving appellee 39 acres.

This letter was written about the 2nd day of June, and was received by Day about June 4th. Believing

that appellant was still willing to carry out the contract as originally made, appellee prepared a deed in exact accordance with the original contracts, omitting, however, the description of the 200-acre survey under the mistaken belief that the 100-acre survey covered all the land which Pierce Cook owned at the time of his death, and that it embraced the 39¾ acres which Seland Cook had agreed to sell him.

Taking R. S. Stewart, a notary, with him, K. J. Day went to the home of appellant on June 6, 1913, a few days after the option had expired. He found appellant at work in his corn field. Day told appellant that his uncle, George Cook, had said the 100-acre survey covered all the land owned by appellant in the estate of his father, and that there was only one survey. Day says appellant did not dispute the statement of his uncle, but, on the contrary, that he concurred in it.

Appellant thereupon tried to get Day to except three-quarters of an acre, but Day refused to do so, and insisted that he would trade in no way except in accordance with the terms of the original written option.

Day testified that it was then agreed between them that the deed should be executed in accordance with the terms of the original contracts; and the deed which had theretofore been prepared was signed by Cook and his wife, and acknowledged before Stewart and delivered to Day. Stewart corroborates Day throughout.

The purchase price of the 39¾ acres, at $20.00 per acre, aggregated $795.00, to which was added $200.00 for the two small tracts of surface on Gauley Branch, amounting in all to $995.00. From this amount there was deducted $6.00 which had been paid appellant at the time he executed the original contracts, leaving a balance of $989.00, for which Day gave appellant his check at the time the deed was delivered.

A short time thereafter Day learned that there was a 200-acre survey in the name of Pierce Cook recorded in Floyd county in 1881; that this was the 200-acre survey called for by the original contract with Cook, and had, by mistake, been left out of his deed by reason of the representations of appellant and George Cook. The mistake was made because the 200-acre survey made in 1881 had been recorded in Floyd county; while the 100-acre survey of 1887 had been recorded in Knott county, which had been created out of Floyd county in 1884.

In examining the title Day had overlooked the fact that the 200-acre survey was made and recorded before Knott county was created.

Upon discovering his mistake, Day prepared a deed correcting it, and called upon appellant to execute it in order to comply with his contract; but, appellant, having refused, Day and wife brought this suit against appellant to require him to specifically perform his contract by executing the deed of correction. The court granted the prayer of the petition, and Cook appeals.

Appellant admits the execution of the written contracts, and that he had offered to sell the land to Day for $1,000.00 after the expiration of the option, provided Day would except three-quarters of an acre. Appellant says, however, that at the time he executed the deed to Day, he and Day entered into a new contract, which had nothing whatever to do with the written contract; that by the terms of the new contract it was agreed that Day was to pay $995.00 for appellant's one-sixth interest in the 100-acre survey and the two small surface tracts on Gauley Branch; and, that appellant's interest in the 200-acre survey was omitted from said trade and deed purposely, because Day was not satisfied with appellant's title to that tract. Day denies that any such contract was ever made or discussed, but insists that the trade as made merely carried out the original option as contained in the written contracts of April 25, 1913.

Aside from the fact that Day's contention is corroborated by Stewart, the notary who took Cook's acknowledgment to the deed, and the fact that appellant stands unsupported in his claim to a new contract, the undisputed circumstances attending the transaction show beyond any question, that the trade as finally made was in execution of the original contract. The original contract called for a sale of 39¾ acres at $20.00 per acre, or $795.00, and $200.00 for the surface of the two small tracts on Gauley Branch, making a total of $995.00; and, after deducting from that total the $6.00 paid under the original contract, there remained a balance of $989.00. That was the precise amount which Day paid to Cook. Furthermore, Cook afterwards told Stewart that he had sold all of his land.

According to appellant's contention, the land he sold to Day on June 6, 1913, was valued at $60.00 per acre, which he claims was its fair value at that time, although

he had contracted to sell it for $20.00 an acre, six weeks before. Appellant would justify this claim by saying that the land had risen from $20.00 to $60.00 per acre in six weeks on account of a railroad having been projected into the neighborhood.

The rule concerning the nature and amount of evidence necessary to reform an executed contract upon the ground of mistake or fraud is, that the mistake or fraud must be clearly established by the proofs. The proof must be full, clear and decisive; mere preponderance of evidence is not enough; the ground for relief must appear beyond reasonable controversy. Coleman v. Illinois Life Insurance Co., 26 Ky. L. R., 900, 82 S. W., 816. Or, as was said in Griffith v. York, 152 Ky., 16: "In order to enable one to relief of this character, the evidence, by which the alleged mistake is established, must be clear and convincing."

See also Kolb v. Dubois, 150 Ky., 92; Lindenberger v. Rowland, 159 Ky., 760; Ison v. Sanders, 163 Ky., 611; Pomeroy's Eq. Juris. (3rd ed.), Sec. 850; Bispham's Equity, Sec. 469.

The proof in this case is of that decisive character which fully justified the ruling of the chancellor.

Judgment affirmed.