### Johnson, et al. v. Gadberry.

(Decided February 16, 1917.)

### Appeal from Pulaski Circuit Court.

Reformation of Instruments—Evidence.—The rule concerning the nature and amount of evidence necessary to reform an executed contract upon the ground of mistake or fraud, is that the mistake or fraud must be clearly established by the proof. The proof must be clear and decisive; a mere preponderance of evidence is not enough; the ground for relief must appear beyond reasonable controversy.

MORROW & MORROW and W. B. MORROW for appellant.

WILLIAM M. CATRON for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The Johnson heirs of Fayette county owned a body of land in Pulaski county known as the "Seminary Tract," which they were selling in small tracts, through their attorney and agent, W. Boyd Morrow, of Somerset.

Morrow sold a tract on Bee Lick branch to the appellee, Perry Gadberry, and sent Graybeel, a surveyor, to run the lines, stake it, and ascertain the acreage.

The following plat will assist materially in understanding the contention of the parties:

The first line A B was a well known line of an old survey; and, Tartar's corner was likewise well known. Morrow told Graybeel to run a line from a stump at the Peter Tartar corner to Bee Lick Branch, which he did, making that call read "N. 58 W. 100 poles." Graybeel then continued his line down Bee Lick branch to D and A, the beginning point. He did not, however, measure the first line from A to B, but treated it as 140 poles, the distance designated in the old survey.

Gadberry joined Graybeel while he was making the survey and told Graybeel to run the line up to the lane, which he did. By thus extending the lines to the lane the survey added 8½ acres which lay between the lines B C (directed by Morrow) and the line E F (directed by Gadberry). The Johnson heirs also owned the land above the lane.

By treating the line A to B as 140 poles in length, the boundary A, B, C, D contained 45 acres; and Gray-

beel made a rough plat or map showing that fact, and the further fact that the additional tract of 8½ acres which Gadberry wanted extended to the lane "to where Gadberry wants," making 53½ acres in the entire tract south of the lane.

When Gadberry called on Morrow a few days later to close the trade, Morrow showed him the map; marked the figures "8½" on the smaller tract; and, treating the tract A, B, C, D, as containing 45 acres, Gadberry bought the two tracts, aggregating 53½ acres, at $3.00 per acre, or $160.50 for the entire tract. Accordingly, the Johnson heirs executed a deed to Gadberry on Sept. 30, 1911, reciting the payment of $50.00 and the execution by Gadberry of his lien note for $110.00 due six months thereafter, for the balance of his purchase money.

The deed gave the following calls as the boundary:

"Beginning at High Falls, old corner, thence N. 30½ E. 140 poles; N. 74 E. 27 poles to a stake in old line; thence N. 58 W. 100 poles to Bee Lick branch; thence S. 26 W. 6 poles; thence down Bee Lick branch with its meanders to the beginning, containing 53½ acres more or less."

It was, however, subsequently learned that the line A, B, running north 30½ east, was only 115 poles in length, and not 140 poles; and that the tract A, B, C, D, contained 21½ acres, and not 45 acres. It followed, of course, that there were only 30 acres below the lane, and in order for Gadberry to get his 53½ acres called for by his deed he must get 23½ acres north of the lane. That he now claims, and insists that the boundary should follow the old line A, B, E, H, or A, G, H, and thence across to Bee Lick, so as to include 53½ acres.

Promptly after the discovery of the mistake the Johnson heirs brought this suit for a correction of the deed by making the line 115 poles in length instead of 140 poles, and the entire tract to contain 30 acres instead of 53½ acres. The petition gave a credit upon defendant's note of $70.50 (the purchase price of the 23½ acres shortage), and asked a judgment for $39.50, the balance due upon the note, and for the enforcement of the lien therefor.

The answer traversed the allegations of mistake; alleged that the defendant had bought 53½ acres of land; relied upon the description as written; and, further alleged that if there was any mistake or error in

the deed it was in not extending the lines and distances far enough to enclose and give Gadberry the 53½ acres bought by him. Gadberry also tendered $118.45 in payment of his note, which was not accepted. There is no counterclaim, and the answer asks no affirmative relief.

In testifying, however, Gadberry claimed that his purchase included a strip of land north of the lane, thirty rods wide and running across the field, and that he and Morrow so understood the boundary; and, it is contended that Gadberry is supported in this position by the testimony of Valantus Merrick and Luther Merrick, who were present when Morrow and Gadberry closed the trade.

The judgment declares: (1) that Gadberry bought from the Johnson heirs "a certain tract of land containing 53½ acres, including a strip of land equal to 30 rods clear through, above a certain lane, as described in the pleadings, also 7 or 8 acres further up and north of said strip above the lane, as set out and described in the pleadings, and that the defendant, Perry Gadberry, is the owner of and entitled to undisturbed use and occupation of same;" (2) that Gadberry pay plaintiffs the $118.45, theretofore tendered in satisfaction of his note; and, (3) it dismissed the petition at plaintiff's cost.

The Johnson heirs appeal.

As the defendant's note was past due when the suit was filed the plaintiffs were entitled to have their lien enforced to secure the payment of whatever sum was due; either for $39.50 in case the deed should be corrected, or $118.45 if it stood as written. In dismissing the petition without any relief the chancellor clearly erred. Neither do we understand the reasoning by which the chancellor, in view of the pleadings, gave Gadberry title to two tracts of "30 acres above a certain lane" and "7 or 8 acres further up" and above the lane. He made no such claim in his answer and, as will be hereafter shown, his proof does not sustain the finding.

"The rule concerning the nature and amount of evidence necessary to reform an executed contract upon the ground of mistake or fraud is, that the mistake or fraud must be clearly established by the proofs. The proof must be full, clear and decisive; mere preponderance of evidence is not enough; the ground for relief must appear beyond reasonable controversy." Cook

v. Day, 168 Ky. 282. See also Coleman v. Ill. Life Ins. Co., 26 Ky. L. R. 900, 82 S. W. 816; Kolb v. Dubois, 150 Ky. 92; Griffith v. York, 152 Ky. 16; Lindenberger v. Rowland, 159 Ky. 760; Ison v. Sanders, 163 Ky. 611; Scott v. Spurr, 169 Ky. 575; Anderson v. S. V. & E. Ry. Co., 171 Ky. 747, to the same effect.

In our opinion the plaintiffs' proof fully satisfies the high standard thus fixed.

Morrow explicitly and clearly states that the purpose was to sell Gadberry only the land below the lane; and in that he is corroborated by Graybeel and the attending circumstances. Morrow was then trying to sell the land north of the lane to Curry Norfleet, and, of course, would not sell the same land to Gadberry while the Norfleet trade was pending. Furthermore, when carefully read the testimony of Gadberry and the Merricks does not contradict Morrow.

Briefly stated, the proof is as follows: When Graybeel made the survey, he first ran the second line from B to C as he had been directed to do by Morrow, and, at Gadberry's request, he enlarged the survey by taking in the 8½ acres enclosed in the line B, E, F, C, thus extending the boundary up to the lane. And, in order that Morrow might understand the changes, he marked the north line (the lane) with these words written on the map, "To where Gadberry wants." Gadberry admits, upon cross-examination, that he was present and saw Graybeel run the second course "north 74 E. 27 poles *to a stake in old line,*" and that Graybeel stopped at E., which was in the old line and on the lane. Roberts was also present when the lines were run and says Graybeel ran the lines B, E, F, C, at Gadberry's request, and that Flinn marked a tree on Bee Lick at the end of the line E, F, at Gadberry's request. No witness says Graybeel attempted to include in his survey any land above the lane. On the contrary they all agree that Graybeel stopped when he reached the lane.

Concerning his trade with Morrow, Gadberry testified as follows:

"Mr. Graybeel came down there and said there were about 30 acres below the lane; so I asked him how much there would be in a strip clear through above the lane, and he said about 15 acres, and said I could see Mr. Morrow further about the matter. So, when I came to town I saw Mr. Morrow and we agreed on it at $3.00 per acre.

I told Mr. Morrow that I had measured across the field above the lane and it was 30 rods wide, and Mr. Morrow said, 'Now is *this* the 45 acres which you and Mr. Graybeel were talking about?' and I said, 'Yes.' He then asked me if I cared to go further north about seven or eight acres and I told him I would do so. He then said that would make about 53 acres; so when the deed came it called for 53½ acres. I paid him $50.50 down on that 53½ acres of land and gave my note for the remainder, $110.00, to be paid in twelve months." "Q. Was there anything said with reference to a field above the lane; if so, what was said with reference to the width? A. Yes, I told Mr. Morrow that I had measured across that field and it was 30 rods wide, and he asked me if I wanted it to equal 30 rods all the way through and I told him I did. This was when he asked me if I cared to go seven or eight acres further north. He said that would then contain about 53 acres, and I told him I would take it."

Although Gadberry says Morrow did not show him a map or plat of the survey on that occasion, Morrow says that he and Gadberry examined the map Graybeel had given to Morrow, and that Gadberry pointed out to him on the map that he would buy up to the lane; and, that Graybeel had marked the line "to where Gadberry wants," at his suggestion.

It will also be noticed that Gadberry's testimony as above given, attributes to Morrow language that can only refer to a plat showing the 45 acres, which all parties then thought were contained in the survey bounded by A, B, C, D, and the 8½ acres immediately north of that tract and extending to the lane. Furthermore, Gadberry is certainly mistaken in saying that Graybeel had said there were only 30 acres below the lane, because Graybeel's map then in Morrow's possession showed there were 45 acres in the boundary A, B, C, D, and 8½ acres north of it; and all below the lane. The mistake was not discovered until after the deed had been delivered, while the conversation between Morrow and Gadberry resulted in the trade and, of course, preceded the deed. Graybeel expressly so testifies as to the discovery of the mistake.

Again, giving Gadberry's statement as to what he said to Morrow about the strip above the lane 30 rods wide, and the answer attributed to Morrow their full meaning, it is plain that Morrow was talking of the 8½

acres south of the lane as shown by the map in his pos-session. The testimony of the Merricks upon this point is no more definite.

Morrow was careful to have an accurate description of whatever land he should sell Gadberry, and for that purpose he employed Graybeel to go upon the ground and make a survey of the boundary to be used in draw-ing the deed. After Morrow had taken all these pre-cautions, it would require too great a demand upon one's credulity to ask him to believe that Morrow had con-veyed Gadberry 23½ acres above the lane, and without attempting to give a description thereof, as was done in the judgment.

Furthermore, the survey claimed by Gadberry will not close, since the northern line will never reach Bee Lick; and, if the survey be run out by following the old survey line A, B, E, H, I, or A, B, G, H, I, the boundary will include about 117 acres instead of 53½ acres.

Gadberry's claim to a strip 30 rods wide and north of the lane cannot be maintained under any view of the case. Since he relies upon his deed as written he will be bound by the description, and under no interpreta-tion can the boundary be made to run on the line now claimed by him.

The proof shows beyond a doubt that all parties con-cerned made the mistake of treating the line A, B as 140 poles in length, when, in fact, it was only 115 poles long. Consequently, the area of the two tracts south of the lane was erroneously stated in the deed to be 53½ acres, instead of 30 acres. Morrow never intended to sell Gad-berry any land north of the lane; and, Gadberry never intended to buy any such land, in his contract with Mor-row. Both were mistaken as to the quantity of land in-cluded in the boundary, south of the lane.

Judgment reversed with instructions to the circuit court to enter a judgment in accordance with the prayer of the petition.