### Chinn v. Baxter, et al.

(Decided June 6, 1924.)

Appeal from Ohio Circuit Court.

1. Reformation of Instruments—Evidence of Mistake Must be Clear, Decisive, Explicit, and Satisfactory.—Before instrument may be reformed upon ground of mutual mistake, evidence of mistake must be so clear, decisive, explicit, and satisfactory as to convince chancellor beyond all reasonable controversy.

2. Reformation of Instruments—Effort to Reform Instrument as Against Decedent Looked Upon with Suspicion.—An effort to reform a solemn writing, acknowledged and recorded, as against one of parties to it who has died, is ordinarily looked upon with suspicion, and evidence of mistake will be given closest scrutiny.

3. Reformation of Instruments—Mistake in Estate Conveyed to Wife, Held Not Sufficiently Shown.—In action to set aside a deed to plaintiff's wife, who had died, on ground of mutual mistake in

conveying fee-simple title instead of life estate, evidence held not sufficient to show mistake.

4. Appeal and Error—Rulings Excluding Evidence Not Considered where Immaterial.—Rulings of court excluding evidence will not be considered on appeal where result on merits would have been same if evidence had been admitted.

BARNES & SMITH and J. S. GLENN for appellant.

HEAVRIN & MARTIN for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

John M. Chinn and Mrs. Laura Craig were married in 1900. Each of them had been previously married, Chinn at the time having five living children and several grandchildren, children of his deceased children, while Mrs. Craig had one daughter by her former marriage. At the time of their marriage Chinn was in his sixtieth year and his wife in her fortieth year.

At the time Chinn was the owner of a farm of 200 acres in Ohio county, while Mrs. Craig had only her marital rights in a farm of about 100 acres left by her former husband. They lived upon Chinn's farm, and appear to have been very much attached to each other and to have lived happily together until her death in 1920.

It was contemplated by each of them that the wife would outlive the husband, and as early as 1912 Chinn expressed anxiety as to provision for his wife after his death. The matter was discussed between them and with other members of the family, and finally after much consideration on the first of September, 1916, he caused to be prepared and executed to her a deed, in consideration of love and affection, ''and other valuable considerations,'' for a one-seventh undivided interest in his 200-acre farm, ''free from any indebtedness I may owe at my death,'' and to include the dwelling house, garden and outbuildings, together with rights of way over the other portions of the farm. The deed was absolute on its face, was executed by the grantor and personally delivered to the grantee by him at the time. It remained in her custody at their home for about eighteen months, and until March, 1918, when she caused the same to be recorded.

Some years after the execution and delivery of this deed Mrs. Chinn's health became very bad, and when it thus became probable that he might outlive her, for the first time he claimed that there was a mistake in the deed,

and that it was intended only to convey her a life estate. This claim, however, was asserted by him only to the draftsman, and there is no evidence he ever made any such claim to his wife during her lifetime.

In 1921, after her death, he brought this equitable action against his deceased wife's only heir at law, Mrs. Baxter, to set aside that deed, alleging in substance that by mutual mistake of the parties, as well as by the draftsman, a fee simple title was conveyed to the interest therein described instead of a life estate only as intended by him, and that life estate to take effect at his death. So that the action having been brought after her death is equivalent to a suit to cancel that instrument, because if under its true terms no interest was to vest in her until his death, then a judgment reforming that deed would in effect be a judgment cancelling it *in toto*.

The plaintiff's own evidence tended to show that he only intended to convey to his wife the interest conveyed to her for and during her natural life, her right to possession to begin only at his death. There is no adequate explanation, however, by him of how it happened that the draftsman of the deed could have so vitally misunderstood his instructions; nor is there any sufficient explanation of how he, with his oft expressed solicitude for the welfare of his wife after his death, could have solemnly executed the instrument without reading and understanding its contents, nor how he could have remained in ignorance of its real effect for the eighteen months the instrument remained in his home, and virtually in his charge, before it was recorded. It is true as recited he did thereafter, at a time when his wife's health had failed, claim to the draftsman that he had made a mistake in the preparation of the instrument, but even so, there is no claim that he ever made any protest to his then living wife about the terms of that instrument, or applied to her to take any steps to have it changed so as to conform to their purpose as claimed by him. He admits in his testimony that at the time the deed was prepared he was not only desirous of securing her a home after his death, but that he was then indebted to his wife, as is virtually recited in the face of the instrument. The claim is made, however, that this indebtedness was, long after the execution of this deed, repaid to the wife only some two or three weeks before her death, but there is yet other evidence tending to show that the debt so repaid to her was not the only debt he owed her.

The evidence of the draftsman is in substance that he undertook to prepare the deed in accord with the instructions of Chinn when his wife was not present, but the witness states at the time of giving his evidence, in the light of the subsequent claim of Chinn that witness had made a mistake, he then believed such mistake was made. Manifestly, his expression of opinion at the time he testified, or his subsequent belief based upon occurrences taking place since the time of the original transaction, if competent at all, do not lessen the force of his statement that he at the time prepared the instrument in accordance with the instructions of Chinn, as he understood them.

The evidence for appellees tends strongly to show not only that at the time the deed was made appellant was indebted to his wife, but that he had stated he made the deed to her because he had used some of her money, and did not want anything about the deed known to his children as it might cause trouble, and this statement is said to have been made long after the execution of the deed, and is wholly inconsistent with his claim that he did not understand its provision.

Before a written instrument may be reformed upon the ground of mutual mistake of the parties, the evidence of such mistake must be so clear, decisive, explicit and satisfactory as to convince the chancellor that the facts have been established beyond all reasonable controversy; and this wise rule of equity has peculiar and forceful application to a solemn writing which must not only be signed but which must be acknowledged before an officer of the law, and which may be placed upon the public records. Not only so, an effort to reform such an instrument as against one of the parties to it, whose voice has been stilled by death, is ordinarily looked upon by the courts with suspicion, and the evidence under such conditions will be given the closest scrutiny and will be required to measure up to the highest requirements of this rule.

Lamastus v. Morgan's Com., 178 Ky. 805, 200 S. W. 32; Whitt v. Whitt, 145 Ky. 367; Stockoff v. Brannin, 14 K. L. R. 1717; Mattingly v. Speak, 4 Bush 316; Royer Wheel Co. v. Miller, 20 K. L. R. 1831; Coleman v. Illinois Life Ins. Co., 26 K. L. R. 900; McMee v. Henry, 163 Ky. 729; Ison v. Sanders, 163 Ky. 605; Cook v. Day, 168 Ky. 282; Johnson v. Gadberry, 174 Ky. 62.

The evidence in this case by no means measures up to these standards, and particularly after the death of the grantee.

The lower court sustained certain exceptions to the evidence of appellant which it is insisted was error. We have, however, concluded it is wholly unnecessary to pass upon the competency of such evidence, for if it be conceded to have been competent, the result on the merits of this case would be the same.

Judgment affirmed.