## Red Bird Oil Company v. Susnick.

(Decided April 22, 1930.)

MURRAY L. BROWN and A. T. W. MANNING for appellant.

W. W. RAWLINGS for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

Fifty or sixty years ago Pallas Bowling and Jesse Gay lived on adjoining farms on Bullskin creek in Clay county. Appellant claims under Pallas Bowling. Appellee Susnick married a granddaughter of Jesse Gay and bought out the other heirs, claiming under Jesse Gay. The land in controversy is a strip approximately 300 yards wide and 900 yards long. Pallas Bowling had lived on his land many years before Gay bought from Bill Britton, who had bought from Perry Davidson. The appellant, who brought the suit, proved by two sons of Pallas Bowling, one of whom was eighty-five years old and the other seventy-three, that after Gay moved in and while he was living on his tract Pallas Bowling sold a piece off the lower end of his farm for $100 and he paid this $100 to Jesse Gay for the piece of land in controversy, adjoining the upper end of his farm. Then Jesse

Gay took typhoid fever and died before he made Bowling a deed. He had a bond for title. When Gay died his oldest son was only seven years old. On July 31, 1876, Ceati Gay, his widow, executed to Bowling a deed for the land in consideration of the sum of $100 in hand paid; this deed accurately describes the piece of land in controversy. Bowling, according to the proof of his two sons and two other witnesses introduced by appellant, took possession of the land when he bought it up to the division fence, which really had been built by Davidson before he sold to Britton, and Bowling used the land as a part of his home farm from that time until he died over twenty-five years ago. He cultivated the land and built a house on it not far from the division fence. This house was first occupied by Jasper Scalf, who was a son-in-law of Bowling. Scalf was killed, and then Jim Arnett, another son-in-law of Bowling, lived in this house. Gay never claimed the land after it was purchased by Bowling, and there was no controversy between him and Bowling about it. After his death his widow, Ceati Gay, remained on his farm for some years. She then married Andy Hensley, who lived on the land with her for about eight or nine years. The Gay farm was after this divided among the Gay heirs and deeds made, but this division did not include the land in controversy, as Pallas Bowling then claimed this land and was in possession of it, and none of the heirs was willing to take it as a part of his share. Thus things ran along until Pallas Bowling's death. He died insolvent. His land was sold. The deed made by the commissioner describes the land as the home farm of Pallas Bowling. But this was clearly sufficient to include the land in controversy; for this land had for more than thirty years been known and treated by Bowling as a part of his home farm. While his house was below on Bullskin creek, he had a fence running around his land that was cleared which ran up to and connected with the division fence, which had been kept up as such for many years. The above are the facts, as shown by the proof for the plaintiff.

The defendant showed by Thomas Gay, who was seventy-six years of age, that he was a brother of Jesse Gay; that he helped to move Jesse Gay to this land, and when he moved there he and his brother made the conditional line between Jesse Gay and Pallas Bowling, beginning on three white oaks and running up the point between Twisting Sourwood and Bullskin. The defendant bot-

toms his claim on the position that this is the only conditional line ever established between Pallas Bowling and Jesse Gay, but this proof is not inconsistent with the proof for the plaintiff, for the reason that, according to the proof for the plaintiff, Bowling did not claim to the upper line until he bought this land from Jesse Gay and they made this conditional line some years after Gay moved there. Isaac Gibson also testifies to this lower line as the agreed line between them, and says that he never knew of any other line; but he does not state any facts showing that the trade did not take place as shown by the plaintiff's witnesses.

While the deed from Ceati Gay passed no title to Bowling, it is potent evidence of the boundary he claimed and the extent of his possession. The title to the land was in Jesse Gay. The widow had no right to convey the land after her husband's death. This fact when the children grew up led to some dispute about Bowling's title, but Bowling continued in possession of the land. There was no attempt to disturb him; at least he was not disturbed, and he continued in possession until his death. Nothing was done to assert title to the land until Susnick bought out the other heirs a short time before this suit was brought.

Under all the evidence the court is constrained to the conclusion that Bowling's long possession of the land for more than thirty years, under his title bond and under his deed from the widow, cannot now be disturbed, and that the court should have entered judgment in favor of appellant for the land. While it is true that this court gives much weight to the finding of the chancellor in cases like this, and does not disturb his judgment on the facts where the mind is left in doubt as to the truth, the court will not shut its eyes to the facts, and when the judgment of the chancellor is clearly against the weight of the evidence, this court will exercise its own judgment as to the truth.

Appellee shows that in two petitions filed by Pallas Bowling in 1891 against other parties, charging that they had trespassed on the land therein described, he did not include the boundary in controversy, but only included his original tract; but these were suits for trespass on the land there described in the petition, and the fact that other land was not included in the description is of little weight. Under the evidence the old title bond was executed over sixty years ago, possession was then taken

under it; the deed of Ceati Gay made in 1876 was evidently made to carry it out; Bowling held adverse possession of the land and of this all the parties had notice, and, when fifteen or twenty years later the Gay land was divided among his heirs, this land was not included in the division; Bowling continued in adverse possession until he died some ten or fifteen years later, and those claiming under him continued in undisturbed possession, until the appellee bought out the Gay heirs and entered on the land shortly before this suit was brought in 1923. After the great lapse of time and the death of all the original parties, the possession of Pallas Bowling and those claiming under him cannot be disturbed. Under section 2508, Kentucky Statutes, the period within which an action may be brought for the recovery of real estate shall not in any case be extended beyond thirty years from the time at which the right to bring the action first accrued. Without doubt Pallas Bowling, and those claiming under him before the entry herein complained of was made, had been in open, notorious, continuous adverse possession of the land here in controversy for more than thirty years, claiming to the boundary set out in the deed made to him in 1876 by Ceati Gay.

Judgment reversed, and cause remanded for a judgment as above indicated.