## W. D. Harris & Company v. Lewis et al.

(Decided October 17, 1930.)

FRENCH HAWK for appellant.

R. MONROE FIELDS and D. I. DAY for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

On January 23, 1923, appellant entered into a written contract with appellee by which it agreed to move his dwelling house from its location to a point on the same lot, 100 feet to the rear, the building to be placed upon wooden posts as a foundation and to be left level and in as good condition as the building then was, except any necessary injury due to the strain of moving. For this appellee agreed to pay appellant $375. Appellant further agreed to build for appellee on the lot a brick bungalow according to plans and specifications drawn by an architect and made part of the contract and to furnish all material and labor as called for therein, and to have the building completed and ready to be turned over to appellee and to turn it over to him completed by August 1, 1923, unless prevented from so doing by strikes, lockouts, or unavoidable delays beyond the control of appellant, and, in the event of such delay due to any of these causes, the building should be so completed and turned over within a like time after the removal of the cause of delay; and after the building was completed appellant agreed to remove from the lot all rubbish and materials not used in the building and leave the lot in a clean and presentable condition. Appellee agreed to pay appellant for the erection of the building $11,625. On January 30, 1924, appellee brought this suit against appellant alleging there had been no strikes, lockouts, or unavoidable delays beyond the control of appellant, but, notwithstanding this, the appellant had failed to have the building completed by August 1, 1923, and still failed and refused to complete same or to turn it over to him, and had failed

to install in the building a heating plant as provided in the plans and specifications. He further averred that it had failed to erect the building in accordance with the plans and specifications and had placed upon it a defective roof that allowed the water to leak in the building and that appellant failed and refused to complete it according to the contract; that the building as constructed was of value at least $6,000 less than a building of the kind and character provided for in the contract; that he had paid the entire consideration, except $1,000; that he would suffer great and irreparable injury from the delay necessary to obtain possession of the building, and that such delay, by reason of the condition in which it was left, would result in the total destruction of the building by reason of the fact that appellant was permitting the roof to leak and the building to go to waste. He further alleged that appellant was insolvent, and that he would suffer irreparable injury unless a mandatory injunction was issued. Affidavits were filed sustaining the allegation of the petition and on the hearing of the motion for an injunction it was granted on February 16, 1924, after the hearing of a large amount of proof on both sides. Appellant filed answer controverting the allegations of the petition; the issues were made up and appellee, under the order of the court, took possession of the house. On May 29, 1924, the action was referred to the master commissioner to take proof and report his findings on the matters in controversy to the court, as the case involved a complicated account, Appellee charged that the house was defective in many particulars. Appellant charged that he had done much extra work by order of the appellee and also charged that the heating plant was not called for in the plans and specifications furnished it. The commissioner took something over a thousand pages of proof. He filed his report on September 3, 1926. By it he reported, in substance, that the building was not constructed according to the plans and specifications and by reason of this was worth at least $4,000 less than it would have been if constructed as contracted. He also found that the heating plant and water system were called for in the plans and specifications and were to be furnished by appellant and had been installed by appellee at the reasonable cost of $1,515, making a total of $5,515 coming to appellee, and that this was to be credited by $1,000, the balance due on the con-

tract and the further sum of $1,058.50, for extras furnished by appellants, making a total of $2,058.50. Both sides filed exception to the commissioner's report. On September 7, 1926, appellant filed its written motion and moved the court for an issue out of chancery. On January 22, 1928, the action was submitted to the court on the exceptions to the commissioner's report. On September 12, 1928, the action having been submitted to the court on the general demurrer to the plaintiff's petition, the demurrer was overruled and on the same day the court overruled the defendant's motion for an issue out of chancery, upon the ground that the motion was not made until the commissioner had filed his report and it came too late, and for the further reason that the appellant did not ask for a ruling upon the motion until the court had read and considered the entire record and indicated to the parties his finding. On the same day the court entered judgment as follows:

"The court finds from the evidence that the sum of $4,000 allowed by the Commissioner to the plaintiff M. D. Lewis, by reason of the fact that the dwelling house referred to in the petition was not built according to the plans and specifications drawn by the architect, R. F. Bradley, is sufficient to cover the item of $1,515.00 allowed in said report to the plaintiff M. D. Lewis, because of the failure of the defendant W. D. Harris & Company to install the heating plant and water system provided for in said plans and specifications, and the court therefore, on said two items, allows to the plaintiff, M. D. Lewis, only $4,000, instead of $5,515.00, allowed in said report; and after deducting therefrom the allowance made in said report in favor of the defendant, W. D. Harris & Company, amounting to the sum of $2,-058.50 the Court finds that as between the plaintiff M. D. Lewis and the defendant W. D. Harris & Company, the defendant W. D. Harris & Company is indebted to the plaintiff M. D. Lewis in the sum of $1,941.50 with interest thereon at the rate of 6% per annum from the 8th day of September, 1924, the date of the filing of the amended petition herein."

From this judgment the defendant appeals and the plaintiff prosecutes a cross-appeal.

It is earnestly insisted that the mandatory injunc-

tion granted on February 16, 1924, was erroneous. But it is well settled under our Code (Civil Code of Practice, secs. 271-276) that the court may in a proper case grant a mandatory injunction. In Louisville & N. R. Co. v. Central Stock Yards Co., 133 Ky. 155, 97 S. W. 778, 781, 30 Ky. Law Rep. 18, the court said:

"A court of equity will not interfere by injunction where there is an adequate legal remedy, but where there is no adequate legal remedy, and the ends of justice require it, it will do so to prevent irreparable injury. And by the express provisions of the Civil Code of Practice (sections 271-276) the injunction may be preventive, or, if necessary, it may be mandatory; that is, affirmatively direct the party enjoined to do the thing or act necessary or proper to be done."

Again in Scott v. Singleton, 171 Ky. 118, 188 S. W. 302, the court said:

"By section 276 of the Civil Code it is provided that no mandatory injunction shall be entered by any clerk, county judge, or two justices in any case, and by section 273 of the Civil Code that an injunction may be granted by the court of any circuit judge in the absence of the presiding judge. The jurisdiction to grant a mandatory injunction is therefore by the Code conferred upon, and confined to, the circuit judge of the district, and, in his absence, to a judge of a similar jurisdiction." To same effect see 22 C. J. p. 22, sec. 5.

Clearly here the proof presented a case showing irreparable injury and no adequate remedy except a mandatory injunction. Under the proof the house should have been completed and possession delivered before December 1, 1923. Under the contract appellee was entitled to possession of the house. The injunction only secured appellee a contract right to which he was entitled. The roof was leaking. The house was being injured by the water. Appellant had done nothing for some time to remedy the defects, and great injury would have resulted to the house if the injunction had been refused. Appellee was insolvent. No doubt for this reason no motion was made to a judge of this court to set aside the injunction.

It is also earnestly insisted that the petition is insufficient, in that it fails to state facts sufficient to show that appellee had performed the things he was to do under the contract. But appellant filed answer without presenting this issue to the court. By consent of the parties all the pleadings were controverted of record, and the proof fully supplied all the missing allegations in the petiton. Clearly the objection now to the insufficiency of the petition on demurrer falls within the rule that a judgment shall not be reversed for any error not affecting the substantial rights of the appellant.

It is insisted that the court erred in overruling appellant's motion for an issue out of chancery; but this motion clearly was not seasonably made and came too late. Hartford Fire Ins. Co. v. Hans, 87 Ky. 531, 9 S. W. 720, 10 Ky. Law Rep. 573, 2 L. R. A. 64; Lewis v. Helton, 144 Ky. 595, 139 S. W. 772; Brown v. Crescent Stove Co., 207 Ky. 470, 269 S. W. 739. The court does not find in the contract any provisions of doubtful construction, and does not see that the rule that a contract should be construed most strongly against a party who prepares it has any application here. There is no ground for holding that appellee was estopped to complain that the house was not built according to the contract because he did not complain earlier. Appellee had a right to wait until the house was finished, and he was not required to watch day by day and see that the contract was not violated. He did not have an inspector constantly on the job, and there is no showing that the inspector misled appellant in any respect. It is unnecessary to set out in this opinion all the facts shown by the large amount of proof taken before the commissioner. It substantially showed that the walls of the house were not all plumb; that part of the mortar in the walls was soft; that part of the walls were badly constructed; that the roof was not put on properly; that the windows were not properly set; and that the house was built five inches shorter than the plans, and then, in order to get in some inside work, the contractor had to cut into the wall and take out something like two inches at one point, which weakened the wall. The cement work was bad and was not properly reinforced. The clear weight of the evidence shows that the contract included the heating plant and that the mistake, giving rise to a controversy on this subject, was made by appellant.

Under all the proof the court properly held that the house, as constructed and delivered to the appellee, was of value $4,000 less than it would have been if the contract had been complied with. The rule of the court is not to disturb the finding of the chancellor on the facts where the mind is left in doubt as to the truth. Here the proof fully sustains the finding of the chancellor.

On the cross-appeal it is insisted that the court should have allowed $1,515 for the heating plant, but, as shown by the judgment of the court, this was included in the $4,000 which was allowed. While there is evidence to the contrary, the court on all the facts concurs in the finding of the circuit court that $2,485 will be sufficient to make such repairs as may be necessary to repair the defects in its construction or compensate therefor.

The judgment is affirmed on the original and on the cross appeal.