## Reiss v. Wintersmith.

(Decided November 10, 1931.)

(As Extended on Denial of Rehearing January 19, 1932.)

JAMES BOSWELL YOUNG for appellant.

LAWRENCE S. POSTON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing on original and affirming on cross-appeal.

This appeal brings under review the trial of an action originally instituted under the Declaratory Judgment Act, section 639a-1 et seq., Civil Code of Practice. In the petition it is alleged that T. F. House executed and delivered to the appellant a note for $1,000, payable one year after date, and that to secure it he executed and delivered to him a mortgage on certain described property. The note and mortgage are dated September 25, 1928. The mortgage was recorded November 1, 1928. Subsequent to its execution and delivery, but before its recordation, House for a valuable consideration, a part of which was the assumption of his $1,000 note to Reiss, conveyed the appellee, Tom Wintersmith, the property covered by his mortgage. Subsequently appellant filed an amended petition, making other lienholders defendants, and prayed for personal judgment against Wintersmith and House for his debt, interest, and costs, and

for the enforcement of his lien against the described property, alleging that Wintersmith was liable to him therefor by reason of his assumption thereof as a part of the consideration of the conveyance to him of the property by House.

To prevent a judgment against himself, Wintersmith traversed the allegations of the amended petition and supplemental petition, and in the second paragraph of his answer averred that this recital in the deed was by mutual mistake inserted therein, namely:

"That for a valuable consideration, receipt whereof is hereby acknowledged, and for the further consideration of the assumption by said second party of two mortgages now against the property herein conveyed, provided that a release of said mortgages by the holder shall operate as a release of the lien retained herein to secure said assumptions, the party of the first part has granted, bargained and sold and hereby conveyed with covenant of general warranty unto the said party of the second part, his heirs and asigns forever in fee simple, further covenanting law seizing of the property herein conveyed with full power to convey the same and that same is free from all encumbrances except the mortgages herein assumed and state and county taxes for the year 1929, the following described property in Louisville, Jefferson County, Ky."

It was further set out in this paragraph that House undertook to convey this property to Wintersmith, and that he accepted a conveyance of the title subject to the mortgage or mortgages existing on October 20, 1928, and not otherwise, and that he was the owner and held title to the property by virtue of a deed from House to him, "subject to and burdened with such mortgage or mortgages as existed upon such property October 1, 1928." He further alleged in paragraph 3 that, during the negotiations between him and House, House informed him that there were two mortgages on the property, one to Reiss and the other to the Southern Trust Company, and that they were the two mortgages "referred to in the deed"; that, after House imparted to him knowledge of the existence of the two mortgages, he examined the records of the office of the clerk of the Jefferson county court, and that the mortgage of Reiss at that time was not on record, but was recorded some days after the date

of his examination of the record; that there was a mortgage to Reiss on the property for $1,000, and, on the margin of the record of it, it was marked, "Satisfied in full and hereby released," duly attested by the clerk of the county court. He averred that under this state of facts he was a purchaser of the property for value and without notice, and that he acquired title to it prior to the mortgage of Reiss. In his prayer for relief he asked that the deed be reformed; that he be relieved of personal liability for the debt of Reiss and the Southern Trust Company; that his title to the property be decreed to be prior and superior to the mortgage of Reiss, and that his mortgage be adjudged inferior and subordinate to his title.

By proper pleadings the issues were formed, evidence taken, and, on a trial, the chancellor refused to reform the deed in accordance with the prayer of appellee's answer, and instead thereof, under the prayer for general relief, adjudged the deed was intended to be, and was, a mortgage to secure Wintersmith in the payment of the $1,090 note which is not set up in any pleading and not found in the record.

A consideration and disposition of the issues presented require an examination and close scrutiny of the evidence. Only the testimony of three witnesses and the exhibits bear on the vital issue of mutual mistake of the parties, if any was made in the insertion of the deed of the language which we have heretofore set out.

In order to state the testimony of the witnesses correctly, we give it in their own language. House's version of the transaction is in this language:

"The consideration was, I owed Mr. Wintersmith some money, and I didn't have enough money, and I told him—'I will deed you this property, there are two mortgages, if you will pay the debts and clean up the mortgages,' and he agreed to do that. He said, 'I don't know whether I will get out enough money to pay me or not, but I will do that. Get Mr. Woodbury to write this deed, then you give me your note for $1,000 or $1,100, and as soon as I sell this property I will give you back the note.' I think it in September, along about the 25th I think, or a little before the 25th, I went to him and told him I needed some money, and I said I have not got enough

474

money to pay out on the building or to protect you, I want to do the right thing and I owe two mortgages on this property. The property is in my name, and the Southern Trust Company and Dr. Fred Reiss have mortgages, and he agreed to take it. He said, 'I don't know whether I am going to get out on it by taking it. Suppose you give me your note,' and I gave him my note.''

Elsewhere in his deposition this witness made this statement:

"He said, 'Well, I will take it, give me a deed to the property, subject to these two mortgages, we will have Mr. Woodbury write the deed, I am to assume the mortgages,' and then he said, 'I don't see how I will get out on it. . . . You can just give me your note.' He told me, 'I will pay these off. . . . If I pay these off, I don't see how I could come out on it, to get what I owed him out of it.''

Mr. Wintersmith made these statements:

"Mr. House owed me some money for some lumber and other material that was furnished on Thornberry Avenue. I was out at the plant talking about getting some money for it and he said he didn't have any money. He said, 'I will deed you that property as protection to you for this money.' I said, 'What is against it?' and he said, 'The Southern Trust Company, $2,700 and Dr. Reiss about $1,000.00.' I said, 'Let us go and look at the house,' and we got in my machine and I went out and went through the house and he said the house was worth $5,000.00 and as soon as I looked at it I knew the house was not worth that and I doubted whether I could get any equity out for that money and while out there Mr. House told me how much he had lost on various jobs and it made me afraid of this one and when we got back to our office I said to Mr. House, 'I don't see where there is any equity in the property but I will think it over until tomorrow' and for him to come back and we would go over it again. I went down to the court house to the clerk's office and ran through the records and I found there that Dr. Reiss did have a mortgage on

it but that Mr. House had paid it off and the next day when he came back I told him I would take the house with its present recorded mortgages on there. Whether the word was 'assume' or 'subject to' I am not able to say but I know I was not to assume any personal liability on the property. Mr. House gave me a note for $1,090.00 and he asked me who would make his deed out and I said Mr. Woodbury, and we went to Mr. Woodbury's and had him make the deed. We couldn't find the note in the office for $1,090.00 and we went down to Mr. Woodbury's and told him to make out the deed to me. I went down the next day to Mr. Woodbury's office and got the deed and had it recorded. The whole thing was he gave me the note and put up the house the same way as you would put up on a mortgage, I would as soon as have the mortgage as the deed. I believed I owned the property and when I told a real estate agent about selling it, I said, Mr. House wants $5,000 and he said, He will never get it. I said you get any offer and furnish it to me and the man lived in the house three and a half months after the deed and I wrote him two or three letters to get out and along in February he finally moved out.''

The note of the appellee, Wintersmith, not being in the record, its correct date cannot be ascertained. It appears, however, that he and House first engaged in conversation about the subject-matter, and that it was at this time that House executed and delivered to him a note for $1,090, which he accepted. He had not at that time decided to accept a deed, but he did so later. The fact that the $1,090 note antedated the deed is very clearly shown by the testimony of Mr. Wintersmith, wherein he stated:

"We couldn't find the note in the office for $1,090.00, and we went down to Mr. Woodbury's and told him to make out a deed to me.''

On the first occasion he stated to House:

"Let's go and look at the house, I don't see where there is any equity in the property, but I will think it over until tomorrow, and for him to come back and we would go over it again.''

It also appears from his testimony that, after he and House separated on this occasion, the appellee went to the clerk's office, examined the record of Reiss' first mortgage, discovered its release on the margin thereof, and made up his mind that Reiss' mortgage was not a subsisting demand against the property, and that House was laboring under a false impression when he proposed to him to deed the property in consideration of his asuming the $1,000 mortgage note to Reiss. This fact is clear from the statement of the appellee, wherein he stated:

"I came to the conclusion there was just one lien against it, to the Southern Trust Company." "I thought that Mr. House was just mixed up in his deed, and was thinking about another piece of property that he had the $1,000 mortgage on, but this showed there had been a mortgage on it, but that it had been paid."

Thus it is shown that the appellee became fully convinced that if, and when, House deeded him the property, although stating to him that there were two mortgages against it, one to Reiss and the other to the Southern Trust Company, there was in fact only one to the Southern Trust Company, and that, by obtaining the deed under the proposition made to him by House, without disclosing to House the fact he (House) was laboring under a false impression as to the two existing mortgages that he would become the owner of the property by virtue thereof, without any liability to Reiss for the $1,000, although the deed recited he "assumed" thereby two mortgages against the property.

The source and sole cause of the unfortunate situation of Wintersmith in this case is the direct and proximate result of his intention and purpose to permit House to remain under the false impression, as he (Wintersmith) believed he was under, as to the existence of the two mortgages. It is plain that his conviction of mind was that, should he accept a deed from House whereby he assumed the mortgages, he would nevertheless obtain title to the house and lot without any liability to the holder of the mortgage debt of Reiss.

The failure of the appellee while participating in the transactions to call the attention of House to the apparent mistake which he (Wintersmith) "concluded" House was laboring under, is not such a mistake as will be

corrected in equity. Such mistake was an unilateral one, and does not authorize a reformation of the deed, or justify the judgment of the court that it was intended by the parties to be a mortgage. Baker v. Combs, 232 Ky. 73, 22 S. W. (2d) 442. The reformation of an instrument is on the theory that it may not be altered or changed by parol evidence, but upon the theory that equity will reform it to express the intention of the parties to the actual contract entered into by them. Irwin v. Westwood Real Estate & Development Co., 200 Ky. 760, 255 S. W. 546.

At the time he and House went to the office of Woodbury to have the deed written, Wintersmith was then under the impression that he was obtaining an undue advantage of House, resulting from House's belief that there were two mortgages against the property, when in fact there was but one in existence. He made out in his own handwriting, for the purpose of having the deed written from House to himself, the following memorandum: "T M. Wintersmith assumes Mort. and S. C. Taxes for 1928 and 1929." Wintersmith in his testimony states that neither he nor House in their conversations discussed the subject of his assuming the mortgages. Whether they did so or not, his written memorandum shows that by it he gave written directions to the lawyer who prepared the deed to have the deed show his assumption of the "Mortg." It will be observed that the abbreviation "Mortg." is in the singular; thus showing that Wintersmith believed that, by his failure to call the mind of House to the fact that the record showed the release of the Reiss mortgage, he was obtaining title to the property and in reality binding himself to pay only the mortgage to the Southern Trust Company. He accepted the deed reciting the fact that he thereby assumed the two mortgages knowing to his own satisfaction that the Reiss mortgage had been in fact paid, and thought he was thereby escaping payment of it, although by the express provision of the deed he assumed the two.

It is conceded that to reform a deed on the ground of mutual mistake, the mistake and its mutuality must be established by clear, decisive, and satisfactory evidence, sufficient to convince the chancellor that the facts have been established beyond a reasonable controversy. Lamastus v. Morgan's Committee, 178 Ky. 805, 200 S. W. 32; Whitt v. Whitt, 145 Ky. 367, 140 S. W. 570; Stockhoff

& De Witt v. Brannin, 14 Ky. Law Rep. 717; Ison v. Sanders, 163 Ky. 605, 174 S. W. 505; McMee v. Henry, 163 Ky. 729, 174 S. W. 746; Cook v. Day, 168 Ky. 282, 181 S. W. 1113; Johnson v. Gadbury, 174 Ky. 62, 191 S. W. 865; Chinn v. Baxter, 203 Ky. 630, 262 S. W. 974. On a decision of the question whether a deed is a mortgage, neither the form of the instrument nor of the transaction is controlling. Green v. Collett, 231 Ky. 215, 21 S. W. (2d) 252.

A deed may be canceled on the ground of mistake, where it is shown there was no meeting of the minds of the parties, if the application to cancel is timely made, but a mistake on one side may be grounds for rescinding the contract or deed, but it is no ground for reforming the instrument. Bell v. Carroll, 212 Ky. 231, 278 S. W. 541; Fidelity & Casualty Co. v. Waugh, 222 Ky. 198, 300 S. W. 592. A direct conflict in the evidence as to the mutuality of the alleged mistake in the deed is conclusive against its reformation. Coleman v. Ill. Life Ins. Co., 82 S. W. 616, 26 Ky. Law Rep. 900. More than a mere preponderance of evidence is required to secure a reformation of a deed. Griffith v. York, 152 Ky. 14, 153 S. W. 31.

"A mutual mistake is one in which both parties participate by each laboring under the same misconception." Coleman v. Ill. Life Insurance Co., supra; Hemphill v. N. Y. Life Ins. Co., 195 Ky. 783, 243 S. W. 1040, 1042. A mistake wholly unilateral will not afford grounds of reformation. Bell v. Carroll, supra. Nor will the gross negligence of one party to a transaction afford grounds of reformation. Bell v. Carroll, supra. The recited consideration in a deed is prima facie correct, and its recitation is some evidence of its correctness and verity. Vernon v. Vernon, 211 Ky. 196, 277 S. W. 248. This rule applies to the memorandum made out by the appellee and left by him and House at the office of Woodbury to be used in the preparation of the deed. The appellee in his testimony stated: "I believe I own the property." This should be construed as evidence against himself. This admission shows that at the time he believed he was the owner of the property when he was dealing with the real estate agent about selling it before he discovered the error on his part, resulting from his conclusion that House was mistaken in his memory of the existence of the second mortgage of Reiss. He was still laboring

under the impression that he had not bound himself at that time to assume more than the mortgage to the Southern Trust Company, notwithstanding the language in the deed from House to him. Considering the recitation of the consideration in the deed, the appellee's memorandum, his belief that he was the owner of the property when dealing with the real estate agent, together with his concealment from House his conviction of mind that House was laboring under a false impression at the time he executed and delivered to him the deed, together with House's testimony, we are not convincd that appellee is entitled to a reformation of the deed or to the relief granted to him by the judgment rendered. He admits that House imparted to him knowledge of the existence of the two mortgages against the property during the negotiations of the trade and prior to the execution and delivery of the deed. There is no charge or insinuation that House either concealed or misrepresented any fact to him. His own failure to call House's attention to the condition of the record of the release of the Reiss mortgage, and obtain from him an explanation of the two mortgages which House discussed with him, may be regarded as gross negligence on his part. The information which House gave him put him on notice, and made it his duty, before making the memorandum and delivering it at the office of the attorney and causing a deed to be written and his acceptance of it reciting that he assumed two mortgages, to require of House an explanation of the release of the Reiss mortgage on the margin of the record.

In the case of Willis v. Vallette, 4 Metc. 186, the applicable rule is stated that "whatever puts a party upon inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty . . . and would lead to the knowledge of the requisite fact, by the exercise of ordinary diligence and understanding." Summers v. Taylor, 80 Ky. 429; International Shoe Co. v. Bowling, 201 Ky. 690, 258 S. W. 113. It appears to us that the only mistake established by the evidence was that of the appellee in failing and refusing to inquire of House about the two mortgages of which he gave appellee notice, and thus obtain actual, full knowledge of the status of the record of the Reiss mortgage as it then appeared of record. His acting on the alleged mistake was wholly voluntary on his part, resulting from his intentional, or negligent, failure to reconcile the informa-

tion which he obtained from the record of the Reiss mortgage with that imparted to him by House. The finding of the chancellor on the facts will not be disturbed by this court, where the mind is left in doubt as to the truth. Harris & Co. v. Lewis, 235 Ky. 810, 32 S. W. (2d) 401. This rule has no application where the mind of this court is not left in doubt as to the truth. Davis v. Dean, 236 Ky. 362, 33 S. W. (2d) 340. This court will review for itself the facts adduced, and, if it clearly and reasonably appear that the finding of the facts by the chancellor is contrary to the evidence and inferences reasonably deducible therefrom, we will review the evidence and determine its weight for ourselves, and, if his finding of fact is palpably against the preponderance of the evidence, we will not regard ourselves as controlled by the judgment of the chancellor. Elliott v. Elliott, 234 Ky. 257, 27 S. W. (2d) 963; Red Bird Oil Co. v. Susnick, 235 Ky. 161, 30 S. W. (2d) 875; Black v. Noel's Adm'r, 240 Ky. 209, 41 S. W. (2d) 1100. It is our conclusion that the trial court erred in his finding upon the facts, and that the appellee was not entitled to the relief sought or given.

The appellee entered a motion to dismiss this appeal. His motion was passed to the merits. It was based upon the theory that the transcript filed was a partial transcript. The transcript herein not only purports to be but actually embraces the entire record as it relates to appellant and appellee. Murrell's Adm'r v. McCallister, 78 Ky. 73. Subsection 7 of section 737, Civil Code of Practice, applies only where the appellant's appeal is presented on a partial transcript. In such case notice of such filing of the partial record must be served on the appellee and the notice and schedule must be copied in the record. Sebree v. Henderson, 205 Ky. 524, 266 S. W. 53. The fact that the circuit court granted the appeal did not preclude the appellant from abandoning the appeal taken under such order and entering a motion for an appeal, as provided by section 734, Civil Code of Practice. See Wermeling v. Wermeling, 224 Ky. 107, 5 S. W. (2d) 893. With these views, appellee's motion to dismiss is overruled.

Wherefore the judgment is reversed on original and affirmed on cross-appeal for proceedings consistent with this opinion.