## Thomas, et al. v. Bradley, et al.

(Decided November 17, 1925.)

### Appeal from Rowan Circuit Court.

1. Reformation of Instruments—Evidence Held to Warrant Reformation of Deed for Mutual Mistake as to Boundary Line.—Evidence held sufficient to warrant reformation of deed for mutual mistake as to location of boundary line.
2. Reformation of Instruments—Mistake or Fraud Must be Clearly Established to warrant Reformation.—To reform executed contract, mistake or fraud must be clearly and decisively established, and mere preponderance of evidence is insufficient.
3. Appeal and Error—Chancellor's Fact Finding Not Disturbed, Unless Clearly Against Weight of Evidence.—Fact finding of chancellor, who knew witnesses and was in position to judge of their credibility, cannot be disturbed, unless clearly against weight of evidence.

W. E. PROCTOR and HOBSON & HOBSON for appellants.

B. S. WILSON for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellees, Bradley and Riley, plaintiffs below, instituted this action in the Rowan circuit court for a reformation of a deed of conveyance, executed by them to appellants, B. F. Thomas and Minnie Thomas, on the 8th of July, 1910, for a tract of land supposed to contain 12 to 18 acres as recited in the deed. The lands were purchased and title bond executed by Bradley and Riley to the Thomases on the 5th of April, 1909. At that time the Thomases paid $100.00 in cash and executed notes for the balance of the purchase money, the whole price being $600.00. The balance of the purchase money was later paid. When the lands were surveyed two or three years later it was discovered, so appellees averred, that the description of the boundary of the lands conveyed was by mutual mistake made to read:

"Beginning at a stake just below said B. F. Thomas' barn and just north of small branch running almost west to the Vincent or oil company's line almost a north course to F. D. Nickell's line; thence almost an east course with said Nickell's line to Mrs. B. F. Thomas' corner; thence with Mrs.

Thomas' line to said B. F. Thomas' line a southernly direction to a corner in this land and said B. F. Thomas; thence to said Thomas' line an easterly course to county road, thence a southerly course with said county road to the beginning, and supposed to contain from 12 to 25 acres, more or less," whereas, it should have read:

"'Beginning at a stake just below B. F. Thomas' barn and just north of a small branch and running almost west of a small straight chestnut tree or sapling in the north line of the J. W. Riley 8 3/10 acre survey of October 12, 1910; thence north 13 west 42 poles to a high stump in the line of the old Alley tract and of F. C. Nickell; thence with said F. C. Nickell line an easterly course to Mrs. B. F. Thomas' line or corner; thence with Mrs. B. F. Thomas' line and B. F. Thomas' line a southerly direction to a corner in this land and B. F. Thomas; thence with said B. F. Thomas' line an easterly course to county road; thence a southerly course with said county road to the beginning, supposed to contain from 12 to 18 acres," etc.

In pleading a mistake the plaintiffs in their amended petition averred:

"The plaintiffs say that to the the extent as shown by the allegations of this amendment the deed made by the plaintiffs to the defendants and which is referred to and relied upon by the defendants in their answer and counterclaim herein is to that extent an error and the result of a mutual mistake and erroneous belief on the part of both plaintiffs and defendants and is therefore wrong and to that extent should be reformed and corrected, and said corrections and reformations ought to be made so as to cause the said deed to contain the description last above set out and to convey only the land in said description set out and described."

With the pleadings are filed three or more maps; two of them in their general outline are much the same. One of them, made by S. S. Cassity, civil engineer, and filed with his deposition, shows the location of the Alley tract of land and the tract now claimed by appellants, and the tract of 8 3/4 acres known as the J. W. Riley

boundary, the S. M. Bradley 30 6/10 acre tract, the F. C. Nickell boundary and the J. A. Vincent or oil company 500-acre tract, together with certain other surveys and boundaries adjoining. It will be observed that the deed sought to be reformed describes the land as:

> "Beginning at a stake just below B. F. Thomas' barn and just north of a small branch, and running almost west to the J. A. Vincent or oil company line."

Appellees contend that the expression, "to J. A. Vincent or oil company line" was placed in the deed by mutual mistake of the parties; that the property conveyed did not extend so far west as the J. A. Vincent or oil company tract, but there intervened a considerable boundary of land which belonged to S. M. Bradley or to Bradley and Riley, which the deed was not intended to cover or convey. It will further be observed that the land conveyed is a part of the old Alley tract. Appellant Thomas owned a boundary of two or three acres inside of the Alley tract and the land they purchased adjoins their home place and extended west in the direction of the J. A. Vincent or oil company tract, which was several hundred yards away. According to the description contained in the deed, and that is exactly what appellants are claiming, the boundary covered by the deed contains several times the number of acres called for in the deed.

While the negotiations for the purchase of the tract in controversy were going on, B. F. Thomas, for the purchasers and appellees, Bradley and Riley, went on the lands for the purpose of locating the line. All the evidence is to this effect, but it is insisted by appellants that when they went on the line they supposed that the west line of the old Alley tract coincided with the east line of the oil company or J. A. Vincent tract; and, further, that the line of the last named tract was in the immediate vicinity of a certain young chestnut tree which the parties marked by tacking a white envelope to it and which they intended to make a corner in the division line; but he now contends that instead of making the chestnut a line in the boundary, appellees finally agreed to sell him all the land owned by them up to the J. A. Vincent or oil company line, and at the time not knowing just where the line was and no one of them able to locate it; that it was a chancing bargain on the part of each of them; that he, Thomas, got the best of the bargain. In his evidence

he declined to state what number of acres was in the boundary he now claims, but admits that at the time they went over the land and were considering the purchase he estimated the boundary he was purchasing at sixteen or eighteen acres; that the other members of the party estimated it from twelve to twenty-five acres. Both appellees, Bradley and Riley, testified that they marked the tall young chestnut as the southwest corner of the tract which they were selling to Thomas, and that from the chestnut the line was to run north to F. C. Nickell's line. This line is shown on the map in the record, and as established gives to appellants approximately seventeen acres of land under the deed. Appellants, however, contend that they are entitled to another boundary of about nine acres in the old Alley tract and yet another boundary lying beyond containing 30 6/10 acres, because these tracts intervene between the original Thomas property and the J. A. Vincent or oil company tract.

From the evidence it clearly appears, it seems to the court, that the description in the deed, calling for the J. A. Vincent or oil company tract, was a mistake, and that neither party knew or understood where the east line of the J. A. Vincent or oil company tract was located, and each was laboring under the belief at the time that it was near the young chestnut tree which they marked. In testifying about how the trade came about Judge Riley, one of the appellants, said:

"Mr. Thomas asked me to sell him a tract of land back of his wife's home place. He and I went to S. M. Bradley. We went down on the land and started as a division line between this land we sold and the other lands owned by S. M. Bradley and J. W. Riley at that time. We started on the north side of a branch in the edge of the county road and we run a line almost west course to a straight small chestnut tree. Mr. Thomas claimed this tree and marked it with a piece of paper, and at that time he claimed it was the Alley line or would not be more than ten feet off of the Alley line. We went from there down on the land and looked it over and our agreement was to sell him from that chestnut tree almost a north direction to the F. C. Nickell line. If I remember correctly we found a tall chestnut stump which Mr. Thomas and we supposed to be on the Alley corner. We then described the land as easterly direction to a corner in Frank Nickell's line and also

one of the back corners of Minnie Thomas' home place. We then went with Minnie Thomas' home place around the county road to a corner in the line of the county road, which was the corner of the Alley place, and from there we went a southerly direction to the beginning. We estimated this tract. Mr. Bradley's estimate was 20 acres; my estimate was eighteen acres and Mr. Thomas' estimate was sixteen acres. We agreed and did draw writings selling him this boundary of land. Mr. Thomas paid $100.00 and executed two notes for $250.00, which is my recollection, bearing interest. We gave him this writing signed by ourselves and also by Mr. Thomas. We gave him also possession of the land.''

Further along he stated:

''Mr. Thomas shows us the line through from a chestnut over to Frank Nickell's line a northerly direction or about a northerly direction, and he said he was well acquainted with the Alley line and the oil company's line, and he said the oil company's line bounded the tract we sold him, and we then by mistake, which was caused by Mr. Thomas' mistake, designated that as a back line, the line we gave in the deed as the back line. At that time we thought it was the oil company's line, and the Alley line which we thought only adjoined the other and Thomas also thought it, or at least he told us that.

''Q. The oil company land referred to is the same land as is designated on the map as the J. A. Vincent 500 acre tract, resurveyed September 19, 1910, is it not? A. It is the same land.

''Q. I will get you to state, judge, if the oil company land has any connection with the Alley line in any way? A. It don't touch it.

''Q. When did you all learn that the land did not adjoin, as you supposed at the time the deed was made? A. The deed was made before we learned it, and afterwards we found it out Bradley and I had Cassity to run out the old Alley line.

''Q. Then, at the time you made the deed, as I understand you, you thought the Alley line was the same as the J. A. Vincent or oil company line, did you? A. Yes, sir, and was so informed by B. F. Thomas.

"Q. You referred to a chestnut tree in which Mr. Thomas placed an envelope or something? A. Some piece of paper; I think it was an envelope."

On this and other evidence of like nature the court, on submission of the case, reformed the deed so as to make the description, so far as relevant in this case, read: "A certain tract or parcel of land lying and being in Rowan county, Kentucky, and bounded and described as follows: Beginning at a stake just below B. F. Thomas' barn and just north of a small branch and running almost west of a small straight chestnut tree or sapling in the north line of the J. W. Riley 8 3/10 acre survey of October 12th, 1910; thence N. 13 W. about 42 poles to a high stump in the line of the old Alley tract and of F. C. Nickell," etc.

Appellants insist that the proof offered by appellees in support of their claim for reformation of the deed was insufficient to warrant a reformation by the rule laid down in Johnson v. Gadberry, 174 Ky. 62, where we in effect said the nature and amount of evidence necessary to reform an executed contract upon the ground of mistake or fraud is that the mistake or fraud must be clealy established by the proof; that the proof must be clear and decisive, and that a mere preponderance of evidence is not sufficient. That rule has been in force in this jurisdiction for many years and we have no reason or inclination to depart from it. We think, however, that the evidence in this case brings it clearly up to the requirements of the rule. That given by appellant, Thomas, and his witnesses will support the inference that there was mutual mistake of the parties concerning the true location of the old Alley line and that of J. A. Vincent and the oil company line, all persons concerned supposing that the two were one and the same; and, further, that they were located about where the young chestnut tree which they marked stood. Clearly this was a mistake and all parties to the deed were laboring under it. This appears to have induced the grantors to write into the deed the description calling for the line to extend to the J. A. Vincent or oil company line.

The evidence for appellees proves that appellant Thomas asserted, at the time the negotiations were pending and while the parties were on the ground trying to locate the line, that he knew the location of the Alley line and the J. A. Vincent and oil company line, and that the

two lines were not more than ten feet, if that much, from where the young chestnut stood. If this evidence be correct, then the mistake came about through the assertions and claim of knowledge of appellant, Thomas. Appellees say they relied upon the statement of appellant, Thomas, and believing from his statements that the old Alley line and the J. A. Vincent or oil company line were one and the same and that they were located about where the young chestnut stood which they marked, they wrote into the deed the call for the J. A. Vincent or oil company tract. This clearly establishes a mutual mistake. The chancellor, of course, knew the witnesses who testified and was in position to judge of their credibility. In such situation we are not authorized to disturb the finding of the chancellor upon the facts unless it is clearly against the weight of the evidence. The judgment is affirmed.