## Frye's Administrator et al. v. Frye's Administratrix et al.

(Decided March 22, 1935.)

C. E. RANKIN for Elijah Frye's Adm'r.
BERT J. KING for Albert Frye.

HENRY JACKSON and P. J. CLARKE for other appellants.

E. W. DRAFFEN for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

The appellant the State Bank & Trust Company of Harrodsburg, administrator of the estate of Elijah

Frye, deceased, instituted a suit in the Mercer circuit court seeking advice from the court as to the proper distribution of certain funds in its hands, representing the proceeds of a war risk insurance policy.

The plaintiff disavows any interest in the matter, save and except to properly fulfill its duties as the personal representative of decedent; it occupies the position of stakeholder.

Frye, the decedent, a colored man, was an enlisted soldier in the World War and died prior to 1919. The plaintiff, appellant here, qualified as personal representative on February ——, 1934, and is still acting in that capacity. Deceased left no children surviving him; his wife was living at the time of his death, but died some time in 1933. Deceased left several brothers and sisters, known to be living and others whose whereabouts were unknown, if in fact they were living, though there are known descendants of some of his brothers, one at least. All these unknown or undiscovered heirs of Elijah Frye seem to have been properly brought in as defendants to the suit. The policy which had been issued to deceased was known as the yearly renewable term policy, in which his wife was named beneficiary, and she received the monthly installments accruing thereon until her death.

On January ——, 1934, the administrator of Elijah Frye collected from the government $3,064, the commuted value of the unpaid installments, which amount is now in its hands for distribution, and it is alleged that the brothers and sisters of Elijah and their descendants are claiming to be entitled to the whole of the proceeds of the policy. It is shown that the heirs of the soldier's deceased wife are also claiming a portion of the funds, and they are made defendants in the suit. They are Robert Bivin, Lelia B. Martin, Emma Bivin, and Helen Broady, the children of the widow of the deceased soldier, but not the children of the soldier. Under this state of facts the court below was asked to declare the rights of the parties, so that the representative may settle the estate and be discharged. It may be added that Bertha Wells, who qualified as personal representative of the widow, was also made a party.

Upon the filing of the petition and proper showing, appropriate orders were made appointing warning order attorneys, who responded in due time and form.

Thereafter Bradley Frye filed his answer, in which he set up his relationship to deceased, and also undertakes to set out the names of the brothers and sisters and heirs at law of decedent. He also pleads that the widow of deceased was the named beneficiary in the war risk policy, and that from the date of his death, up until the time of her death, she had received, by reason of the policy, a "substantial amount over and above the one-half interest she would have received as dower as the widow of Elijah Frye, and that said sum should be charged as an advancement against any interest she might claim, or her administrator might claim in the estate of the deceased."

The defendant also sets out facts which indicate that John Frye was unmarried and that rumor was that he was killed some fifteen years ago, and asks that the court adjudge him to be dead. This feature of the case does not now concern this court, since the only question is as to the method of present distribution.

Bertha Wells, administratrix of Ada B. Frye, the deceased widow of Elijah, filed demurrer to the second paragraph of the answer of Bradley Frye, and then filed answer. She sets out the facts practically as stated in the petition with respect to the policy of Elijah, that the widow was named as beneficiary, and that following his death she had received the monthly accrued installments up to November 3, 1933, at which date she died leaving four children named above. She claims that, as personal representative of Ada Bivin Frye, the widow, she is entitled to receive of the $3,064 in the hands of Elijah's administrator, one-half, and in addition to this the sum of $750 as exemption allowed by law, and she pleads the Act of Congress of March 4, 1925, which will be later referred to. She takes the position that upon the death of the insured all unpaid installments of the policy become the assets of the estate of the insured, to be distributed among the heirs of the insured under the law of the state with respect to descent and distribution of one dying intestate in Kentucky, the heirs to be determined as of the date of the death of the insured, and not as of the date of the death of the beneficiary, which law, she says, gives to the widow one-half the personalty, and the exemption of $750, the latter amount to be set aside before any distribution, after payment of debts or costs of administration, and she prays accordingly. Such of the heirs

of Elijah Frye filed demurrer to the answer and cross-petition of Bertha Wells.

Other pleadings by heirs at law of deceased are filed, but, since they only set up the relationship of themselves to Elijah and ask that their rights be protected, further reference to such pleadings is not deemed necessary.

At the outset we may say that this court is not now concerned with the final distribution by the personal representatives, since the court below reserved that matter for further control and determination.

The court in its final judgment sustained the demurrer of Bertha Wells, personal representative of Ada Bivin Frye, to the second paragraph of the answer and cross-petition of Bradley Frye, which ruling under cases hereinafter cited was correct; the widow, who was beneficiary under the policy, could not be charged by way of advancement with the amounts she received monthly as the designated beneficiary. She received and was entitled to all monthly payments as long as she lived, as the named beneficiary. If anything comes to her or her heirs, either from accumulated payments or by way of the commuted value of the installments unpaid, it is because of the federal laws, and the laws of our commonwealth with regard to descent and distribution.

The court overruled the demurrer of Albert Frye and the other heirs of the deceased soldier to the answer and counterclaim of Bertha Wells, administratrix, which was also a correct ruling. The parties declining to do any more pleading, the cause was then submitted on the pleadings, with the result that the court adjudged that the trust company should first pay to Ada Bivin Frye's administratrix the sum of $750; then pay court costs and costs of administration. Of the balance left, the trust company was directed to pay to Bertha Wells, Ada Bivin's personal representative, one-half, and the remainder to the brothers and sisters of the deceased soldier, or their descendants in a manner to be determined later.

The brothers and sisters of the deceased soldier were not satisfied with this ruling and sought an appeal, which was granted. The trust company joined in this for the purpose of being further advised as to its rights

and duties. In the brief for appellants, heirs of the deceased soldier take the position that there are no sufficient grounds to entitle the appellee, who is the personal representative of the widow, to either one-half the proceeds or to the exemption of $750, with particular emphasis on the latter claim. It may be suggested that, if she is not entitled to the one, she is not entitled to the other. The converse would be true, if she is entitled to the one, she seems clearly entitled to the other.

It is admitted in the brief for appellants that the heirs and their rights are to be determined as of the date of the death of the soldier, but it is further urged that at the date of the death of the soldier he did not have such an interest in the proceeds of the policy as to vest his widow with any interest therein.

It is also urged that the answer, counterclaim, and cross-petition of appellee shows on its face that it would have been impossible for the widow's exemption to have vested during her life. It is further urged that the United States government, in making distribution to the widow of a soldier, has not set apart to the widow any exemption, citing Davis' Adm'r v. Givens, 245 Ky. 638, 54 S. W. (2d) 30, 31.

Disposing of the last contention above mentioned, it may be said that in the Davis Case, supra, the question here presented as to exemption was not raised, though that case decides the contention that the widow is entitled to one-half of the proceeds of the policy. In that case there had been made a division by the government between two named beneficiaries, who it developed would have inherited under the laws of this commonwealth, one-half to the widow and one-half to the father of the deceased soldier, the court saying in that case:

"The devolution of the personal property of an intestate is fixed by section 1403, Ky. Stat. Under this section and the acts of Congress dealing with the subject-matter, the United States government awarded to the widow of the soldier and his father, one-half to each of them, as we have already stated."

There was no question presented of the widow's right to any exemption. As to the Davis Case, supra, counsel argues that one-half the proceeds of the policy

vested in the soldier at his death, due to the fact that one of the two beneficiaries had died prior to the death of the soldier. It is further suggested that Frye died with only a contingent remainder interest, uncertain as to amount, and that the widow's right could not have vested before her death, because that date was to determine whether or not he left any estate. This argument would be forceful if it were not for the federal statute involved and the Supreme Court's construction of that applicable statute.

There was considerable confusion of opinions with relation to the distribution of the proceeds of a war risk insurance policy, both as to unpaid accumulations and the commuted value of the unpaid installments until the decision of Singleton v. Cheek, 284 U. S. 493, 52 S. Ct. 257, 259, 76 L. Ed. 419, 81 A. L. R. 923. In our court the law in question had been construed to mean that the heirs of the deceased soldier, at the time of the death of the beneficiary, should receive the proceeds of the policy. Sutton's Ex'r v. Barr's Adm'r, 219 Ky. 543, 293 S. W. 1075; Sizemore v. Sizemore's Guardian, 222 Ky. 713, 2 S. W. (2d) 395. However, later opinions did not adhere to the rulings in the two cases named, Mefford v. Mefford, 231 Ky. 127, 21 S. W. (2d) 151, Mason's Adm'r v. Mason's Guardian, 239 Ky. 208, 39 S. W. (2d) 211, and in Flowers v. Flowers' Adm'r, 249 Ky. 203, 60 S. W. (2d) 596, the Sizemore and Sutton Cases were expressly overruled, and since that time this court has closely followed the ruling in the Singleton v. Cheek Case, supra. In that case the Supreme Court seems to have gone to some pains in laying down in unequivocal and easily understood language its construction of the act of Dec. 24, 1919, c. 16, sec. 13, 41 Stat. 371, 375, amendatory to the War Risk Insurance Act of 1917, c. 104, art. 4, sec. 402, and the 1924 amendment thereto, secs. 300, 303, 38 USCA secs. 511 note, 514 note. The act which the court construed in Singleton v. Cheek was the amendment of March 4, 1925, sec. 14, 43 Stat. 1302, 1310, 38 USCA sec. 514, and which was seemingly an arbitrary amendatory act passed by Congress to prevent further confusion in various courts relative to the distribution of accumulated payments as well as the commuted values of installments due on war risk policies. In that case the court said:

"By that amendment, the rule, which, upon the happening of the contingencies named in the prior

acts, limited the benefit of the unpaid installments to persons within the designated class of permittees, was abandoned, and 'the estate, of the insured' was wholly substituted as the payee. All installments, whether accruing before the death of the insured or after the death of the beneficiary named in the certificate of insurance, as a result, became assets of the estate of the insured upon the instant of his death, to be distributed to the heirs of the insured in accordance with the intestacy laws of the state of his residence, such heirs to be determined as of the date of his death, and not as of the date of the death of the beneficiary. The state courts, with almost entire unanimity, have reached the same conclusion.''

The effect of this construction by the Supreme Court determined once and for all that installments accruing before the death of insured, or after the death of the beneficiary, should be treated alike for purposes of distribution. It also substituted ''the estate of the insured as payee,'' and with equal force decreed that at the instant of the soldier's death the proceeds of the policy should be and become assets of the estate of the insured, and further held that such assets were to be distributed to the heirs of the insured in accord with the laws of intestacy of the state of the soldier's residence. It is clear also that the heirs are to be determined as of the date of his death, and not as of the date of the death of the beneficiary.

With this plain language before us, we cannot see any escape from the conclusion that under our laws relating to descent and distribution the widow in this case became seized of everything the law allowed her by reason of statutes which made her a distributee.

No stress should be laid on the use of the word ''heirs'' as used in the federal act. While technically a widow is not an heir, yet our statutes make her a distributee, and in fact, as to the exemption provided, makes her a very much preferred distributee. See Allen v. Foth, 210 Ky. 343, 275 S. W. 804.

The widow of the soldier is by operation of the law in this instance a distributee, and clearly within the meaning of the word ''heirs'' as used in the federal statutes.

We gather from the pleadings in this case that the

deceased soldier left no property of any kind, save the amount of money here in dispute. The statutes which control the distribution of such property are: **(1)** Section 2132, Kentucky Statutes which gives the surviving husband or wife "an absolute estate in one-half of the surplus personalty left by such decedent." This was an act of 1893, c. 205, amended by the act of 1894, c. 76. **(2)** Section 1403 Kentucky Statutes was an act of 1893, c. 251, amended in 1912, c. 72. The older act, which provided for an exemption from distribution by subdivision 5 thereof, set aside to the widow and infant children certain specified personal property, which, if not on hand, was substituted by money on hand. By the Act of 1912, c. 72, subd. 5 (Ky. Stat. sec. 1403), it was amended and provided:

> "Where any person shall die intestate as to his personal estate, or any part thereof, the surplus, after payment of funeral expenses, charges of administration and debts, shall pass and be distributed among the same persons, and in the same proportions, to whom and in which real estate is directed to descend, except as follows: * * * Fifth. Personal property or money on hand or in bank to the amount of seven hundred and fifty ($750.00) shall be exempt from distribution and sale, and shall be set apart by the appraisers of the estate of an intestate to his widow and infant children, or, if no widow, to his infant children or child surviving him. And a like amount of property or cash shall be exempt from distribution and sale and shall be set apart by them to the surviving infant children or child of a widow who dies intestate."

Therefore section 2132, Ky. Stat., fixes the right of a surviving widow to one-half the personalty, and section 1403, Ky. Stat., gives to the surviving widow a decided preference to the extent of $750 in money on hand or in bank.

With these statutes before us, and construing them in the light of the Supreme Court's construction of the War Risk Insurance Act in Singleton v. Cheek, supra, followed in Pagel v. Pagel, 291 U. S. 473, 54 S. Ct. 497, 78 L. Ed. 921, and many cases in both the federal and state courts' including our own, it seems clear to us that the rights of heirs or distributees are to be determined and fixed as at the date of the death of the insured,

hence the widow's rights became fixed upon the death of the soldier. The language in the Singleton Case is that "all installments, whether accruing before the death of the insured or after the death of the beneficiary named * * * as a result, become assets of the estate of the insured upon the instant of his death, to be distributed * * * in accordance with the intestacy laws of the state of his residence, such heirs to be determined as of the date of his death, and not as of the date of the death of the beneficiary."

With this plain pronouncement of the Supreme Court, which we must accept as controlling, since it is in explanation of a federal statute, we cannot escape the conclusion that the funds now in the hands of the administrator of the soldier should receive the same treatment as if the amount had been in its hands on the day of the death of the insured. This being true, under the Supreme Court's decision the sum should be administered as of the day of his death; the sum must be treated as assets in its hands as of that day. The widow was, as of that day, entitled to one-half the fund, and before distribution she would have been entitled to have set aside to her the $750 exemption, because, being assets as of the instant of the soldier's death, it must be treated as money then on hand or in bank. So it must follow that the widow was then seized of the one-half of the fund and the exemption, and it must further follow that her heirs are entitled to what was then hers. We have been pointed to no case, either in federal or state courts, touching on this particular question. This is perhaps true, because, as a hasty examination shows, few states in the Union by their laws seem to provide exemptions for the surviving widow, and only one, so far as a casual observation goes, that has a law similar to the Kentucky law, setting aside cash funds to the surviving widow.

We conclude that the method of distribution adopted by the court in its judgment (reserving further questions of final distribution) is correct and proper and should not be disturbed.

Judgment affirmed.

Whole court sitting.