## Whittle's Adm'r v. Whittle
(Decided June 5, 1936.)

MONTGOMERY & MONTGOMERY for appellant.

O. B. BERTRAM and WILLIAM J. CHUMBLEY for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER —Affirming.

W. A. Whittle and appellee were married July 15. 1931. He was then 71 and she 41 years of age. He died intestate on October 10, 1932, leaving sur-

viving his widow, and a son of a former marriage, S. B. Whittle, appellant. On December 13, 1933, appellee filed petition in equity in the Russell circuit court making defendant the son, both as administrator and heir at law, alleging in substance that at the time of the death of her husband she was in poor health; that she was ignorant of and inexperienced in business matters, having little or no knowledge of the extent or value of decedent's property. Her husband was buried on October 11, 1932, and two or three days thereafter appellant came to her and told her that the law required an immediate settlement and, due to the fact that she was unable to attend to the matter, it was his duty to look after the winding up of the estate. Appellee says that she had full confidence in him and believing his assertions she agreed, and on October 14, 1932, he qualified as administrator and at once took charge of the estate.

She alleges that at the time above mentioned appellant represented to her that deceased owned little property, consisting of real estate of little value, and that most of the personal property, at least all farming equipment, tools, and utensils belonged to him; that the farm upon which she and the deceased had been living was worth about $2,000, and certain other tracts worth about $1,100; that the value of the personal property would not exceed $600, which statements she says together with others hereinafter set out were untrue and known by appellant so to have been, and were made for the purpose of depriving her of her legal rights in her husband's estate; that instead of being $600 of personal property, there was in fact more than $4,000 in chattels, livestock, notes secured by liens, etc., about much of which she had no knowledge or information; that there was an insurance policy on a deceased son of her husband, in which she was told she had no interest; that there were certain small parcels of real estate of little value belonging to her husband, of which she knew nothing at the time.

Believing what her stepson told her, and at his urgent request, she executed a contract (which appears to be a quitclaim) on October 15, 1932, wherein it was agreed that "in order to settle the estate of W. A. Whittle * * * without resorting to the courts," appel-

lant should execute to her his note with security, for $1,300, due in two years without interest, the interest item being waived in consideration of the widow's right to use and enjoy the farm "without committing waste." It was provided that if appellant paid off the note before the end of the first year, she should have the farm's use for only one year, if no crops had been started; but if started she was to be limited to the use of the house, garden, and cow pasture; the same conditions attached if appellant paid the note before the end of the second year, except in such event "she shall vacate the place immediately."

By the terms of the "contract" the widow was to have all household and kitchen furniture "that she carried to the home when she married him 15 months ago, including her clothing and livestock, sewing-machine and cook-stove bought for her by her husband; also all provisions on hand for family use in the house and garden, except one-half the sweet potatoes, which should go to the second party." The second party also agreed that he would pay out of the estate all debts of deceased, including doctors' bills and burial expenses.

In consideration of the execution of the $1,300 note, appellee conveyed to appellant "all her right, title and interest in her deceased husband's estate, including her dower rights and any and all rights she may have in his personal property, and the consideration herein, when fully satisfied, shall be in lieu of any rights she may now have in said estate, and this indenture shall be a bar to her recovery of anything further than that which is stipulated herein."

It appears in pleading that after the contract above mentioned was executed (time not stated), the appellant conveyed the farm to her in consideration of the sum of $1,500, which was met by appellant's canceling appellant's $1,300 note, and her execution of a note for the difference. She also alleges that she took with her, when she married W. A. Whittle, a quantity of personal property which the appellant took charge of under the contract and converted to his own use.

In her prayer she asks that the contract of October

15, 1932, be held for naught; that her note for the balance due on the farm trade be canceled; that the defendant be required to answer and make a true disclosure of property coming to his hands as administrator; and that she be adjudged her one-half the personal property, the use and possession of one-third of the real property for life, and for all other equitable relief. Demurrer to appellee's petition was overruled.

Appellant filed an answer also styled counterclaim, in which he denied the allegations of the petition, and pleaded that appellee was in good health when her husband died; that after his death she began to and did make investigations "regarding her rights in her husband's estate"; that she consulted lawyers, who told her what her "rights in her husband's estate were." It is alleged that she knew the character and value of property owned by her husband from the time of her marriage until his death; that she had possession of his papers before and after his death, custody of his deeds, notes, etc.; and that she knew their contents when she signed the contract.

He collected from sales of property and notes due $2,065.58, of which amount he paid small sums for clerical help, and costs of about $7.50; two notes against his father, $756.58 and $1,300, to appellee "on her agreement," which he says in total was $9.58 more than he received from the personal estate. He says the real estate owned by his father at his death was practically valueless; that the home place, 53 acres, was the best, worth about $1,500; and that the balance consisted of nine various small parcels, in all not worth more than $1,450. He admits that he collected the war risk insurance, to the amount of $3,793, which according to his understanding was "talked to the plaintiff herein" and to his father and lawyers, with whom they had consulted, and it was believed the whole of the proceeds of the policy was to be his at his father's death. He asked that plaintiff's petition be dismissed, but does not ask for a cancellation of the deed to appellee, nor for judgment on counterclaim. Appellee replied, making denial of the allegations of the answer.

It appears that the proceeds of the war risk insurance is the main subject of this contest, and the

facts with relation thereto were plead in an amended peition filed after taking proof, substantially as follows:

W. A. Whittle had been married prior to his marriage to appellee, and to that union there were born two sons, the appellant and Shirley, who was in the service of the United States during the World War. He had procured a war risk policy for $10,000, naming his father beneficiary. Shirley died intestate (date not given) without having married. The father collected monthly installments of $57 until his death. Some years after the death of Shirley, the mother died, leaving surviving the husband and appellant. W. A. Whittle died intestate October 10, 1935, leaving surviving his widow, appellee, and appellant. After the husband's death the commuted value of the policy was paid to appellant, as administrator of the deceased brother. Appellee contends that at the death of Shirley, his mother and father became entitled each to one-half of the proceeds of the policy; that by reason of the death of the mother after Shirley's death and before the death of the father, the husband became the owner of one-half of the mother's estate therein, and appellant entitled to the other one-half, thus making the father owner of three-fourths and appellant of one-fourth, and that upon the death of her husband she was entitled to one-half of her husband's three-fourths, or $1,422.37.

She also alleges that at the time of the contract appellant represented to her that she was not entitled to any part of the proceeds of the policy and that her belief of the statement was brought about by the misrepresentations of appellant, and of a misunderstanding of her rights under the law. In this amendment she asks that she be adjudged entitled to be paid $1,422.37 by appellant, with interest. Motion was made to strike the foregoing amendment from the files, and was overruled.

After a great deal of proof was taken, the cause was submitted on the proof, pleadings, and exhibits, and the court adjudged the contract of October 15, 1932, canceled; that the plaintiff was entitled to her distributable share of the estate of her deceased hus-

band, including W. A. Whittle's share of the war risk insurance; and from this judgment appeal is prosecuted.

Counsel for appellant contends that the judgment of the lower court should be reversed on two grounds: First, that the court should have sustained his demurrer to the petition, because appellee sought to set aside the contract without offering to put him in status quo, which would only be accomplished by restoring to him the benefits received by her in the transaction.

From the pleadings and proof, and under the law, it would appear that appellee was entitled to have set aside to her free from debt or execution a value of $750 of the personal property, one-half the personalty remaining, and the use and enjoyment for life of one-third of all the real estate, or one-third of its present value, if sold, to say nothing of the proceeds of the war risk policy.

While the allegations of the petition may not have been sufficient to establish her right to a *fixed* portion of the war risk policy, yet it was sufficient to show that she was claiming some portion of it and that appellee then had it in his hands.

In his answer appellant does not seek to cancel the deed by which he conveyed the home place to the widow, and as will appear later he is perfectly safe, should the contract be canceled, and may easily put himself in status quo both as heir and administrator; hence we are of the opinion that the court properly overruled his general demurrer. In Robinson v. Robinson, 153 Ky. 828, 156 S. W. 903, 905, we held that the rule requiring repayment of money received, does not apply when the party seeking to rescind or avoid a contract is in any event entitled to retain the amount received by him. The language used therein is peculiarly fitting here:

"On the other hand, if she succeeds in setting aside the contracts and deed, it is manifest, and indeed admitted, that her half of the personal estate left by the decedent will amount to as much as was paid her. So, in either event, she is rightfully in possession of, and cannot be made to surrender, the $302 paid her by the administrator.

We have repeatedly held that the rule requiring a tender or payment into court of money received does not apply when the party seeking to avoid the contract is in any event to retain the amount received. Fox v. Hudson's Ex'x, 150 Ky. 115, 150 S. W. 49 [Ann. Cas. 1914 A, 832]; Bramble v. C. F. & S. E. R. Co., 132 Ky. 547, 116 S. W. 742; Union P. R. Co. v. Harris, 158 U. S. 326, 15 S. Ct. 843, 39 L. Ed. 1003; 20 Cyc. 21.''

Coming to the second contention, appellant agrees that while the general rule is that the decision of a chancellor will not be disturbed if there is any evidence to support his finding, but insists that where it is sought to annul a contract impressed with the solemnity of a deed, the proof should be convincing, and we agree with counsel that we have frequently applied that rule, but there is another rule to the effect that where a confidential relation exists, the one undertaking to uphold a contract which is questioned, has the burden of proving the complete fairness of the transaction. England v. Crawford, 196 Ky. 661, 245 S. W. 519; Davidson v. Davidson, 180 Ky. 190, 193, 202 S. W. 493; Watson v. Watson, 190 Ky. 279, 274, 227 S. W. 270; Gatlin v. Allen, 174 Ky. 225, 192 S. W. 26.

So if we go no further than to take the view that one of the above-announced rules will offset the other, we are presented with a situation where the chancellor's holding should be given weight and effect and we are inclined to the view that since confidential relations existed between the parties, the contract, though it was of solemn character, should be closely scrutinized, and the latter rule not entirely overlooked.

When we come to observe the contract on its face, the impelling thought is that it appears to be unfair. We cannot overlook the precipitancy of the discussion leading up to and the consummation of the contract, all occurring just a few days after the burial of the deceased; neither can we overlook the fact that it was the duty of the appellant, occupying the confidential, and about to be fiducial relation, to disclose as far as his knowledge would permit, not only her legal rights, but the extent and value of, and her rights in, the property left by decedent. That he did not do this is very perceptible from reading the proof, and the same

conclusion is to some extent reached when we read his depositions, which impress us, by reason of their frankness, that his failure must have been due to mistake, rather than a fixed purpose to defraud.

It is strenuously argued that appellee was advised as to her rights by several attorneys, and that therefore she was not misled as to those rights. It is true, as she admits, that hasty visits were made to several lawyers, all of whom, from the proof, appear to have told her the "same thing"; but it develops from a written memorandum by one attorney, which is in the record, that she was merely told what any lawyer would advise, that is, as to what portion of the property she was entitled to under the statutes of descent and distribution. It could hardly be possible that within the brief space of time occurring between the death of decedent and the making of the contract, any lawyer would have undertaken, without close investigation, to advise her of the extent and value of the property left by decedent.

As to the proceeds from the insurance policy, it is highly possible that due to some confusion heretofore existing as to the proper distribution of the commuted value of a war risk insurance policy, there was a misunderstanding. Appellee and appellant may have been altogether honest in their belief that appellant was to be the sole recipient of the proceeds of this policy. Looking to the testimony it appears that appellant claims to have had legal advice to that effect. The appellee, having confidence in him, believed him when he told her she was not entitled to any of the policy; that it was made to his mother and she (appellee) was not a blood relative. Appellant admits that he did tell her that the proceeds from the policy belonged to him, and rather insisted in his deposition that he was entitled thereto.

We express the opinion that the proof adduced by appellee sufficiently sustains the conclusions of the lower court. The proof with regard to the insurance proceeds which passed under the general conveyance of all personal property left by deceased, would justify the setting aside of the contract. There is ample authority to uphold the court's judgment whether the ground upon which rescission is sought be either the

existence of fraud or mistake. Fields v. Cornett, 254 Ky. 35, 70 S. W. (2d) 954; Robbins v. Robbins, 246 Ky. 411, 55 S. W. (2d) 31; Goodin v. Page, 235 Ky. 54, 29 S. W. (2d) 581; Reiss v. Wintersmith, 241 Ky. 470, 44 S. W. (2d) 609; Farmers' Trust Co. v. Threlkeld's Adm'x, 257 Ky. 211, 77 S. W. (2d) 616.

The court directed cancellation of the contract, and adjudged plaintiff "entitled to her divisible and distributable share of the estate of her deceased husband * * * which estate includes W. A. Whittle's share of the War Risk insurance collected by the defendant as administrator of Shirley Whittle," which judgment, it appears, could be carried into effect only by a settlement of the estate according to the provisions of the statutes. Since the court made no determination of the portion of the estate, nor of the proceeds of the policy to which appellant is entitled under law (and we are of the opinion that she is entitled to a portion according to cases cited infra), those matters stand unadjudicated, hence we will not undertake to determine her share; however, her portion of the policy proceeds may be readily fixed by following Singleton v. Cheek, 284 U. S. 493, 52 S. Ct. 257, 76 L. Ed. 419, 81 A. L. R. 923; Mason's Adm'r v. Mason's Guardian, 239 Ky. 208, 39 S. W. (2d) 211; Frye's Adm'r v. Frye's Adm'x, 258 Ky. 554, 80 S. W. (2d) 584, 585; Crum's Adm'r, et al. v. Crum, 263 Ky. 219, 221, 92 S. W. (2d) 63.

Holding the views herein expressed, the judgment is affirmed.