## First State Bank of Pineville v. Catron et al.

(Decided Feb. 9, 1937.)

(As Modified on Denial of Rehearing May 25, 1937.)

GEORGE R. BROWN, JR., J. H. PAYNE and H. H. OWENS for appellant.

TUGGLE & TUGGLE for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

Some time prior to January 5, 1921, Ennis Beddow, a World War veteran, was by the county court of Knox county adjudged to be incompetent to manage his estate and J. F. Catron was by order of such court appointed his committee. Whereupon he took the oath and executed bond as such committee in the penal sum of $4,000, with Tye Lawson as surety. The bond was duly approved by the court.

On October 6, 1925, J. F. Catron, the committee, and his wife, for the recited consideration of $2,000, conveyed to "J. F. Catron in trust for the estate of Ennis Beddow, * * *" a tract of land described as containing 12 acres more or less.

On October 22, 1927, an order was entered in the Knox circuit court approving a final settlement of J. F. Catron as committee, accepting his resignation as committee and appointing the First National Bank of Barbourville as his successor. The First National Bank served as committee for only a short time when it was relieved of the trust and the First State Bank of Pineville was appointed committee for the incompetent and duly qualified and has since been acting as such.

In February, 1934, the First State Bank of Pineville, as committee, instituted this action against J. F. Catron, the former committee, and the surety on his bond, alleging in substance that the tract of land conveyed by the deed referred to was composed of several vacant lots for which there was no market value because they were subject to overflow; that J. F. Catron as committee had received and not accounted for sums in excess of $2,000 of the funds of the incompetent which were intrusted to his care and, in an effort to keep the funds and to relieve himself from liability to his ward, he and his wife executed the deed to himself in trust for the incompetent; that the deed was and is void and of no binding force and effect, and that such conveyance by the committee and the retention by him of the $2,000 as recited purchase price was a fraud upon the incompetent and his committee and the transaction was a

breach of trust upon the part of Catron as committee; that plaintiff elected to repudiate the transaction, but to assert a lien on the land to secure in so far as it would the $2,000 retained by the former committee as the purchase price. It prayed that it recover of Catron as committee the sum of $2,000, with interest from October 6, 1925, until paid, and that the deed 'be canceled and the land described therein be adjudged in lien to secure in so far as it would the sum sued for.

By answer as amended, the defendant J. F. Catron made a general denial of the allegations of the petition and alleged that on July 23, 1924, he made a written settlement with the judge of the Knox county court of his affairs as committee and that on October 24, 1925, he made another written settlement with the judge of the Knox county court, which settlement set out among other things the purchase of and payment for the land mentioned in the petition; that at the next regular term an order was duly entered in the Knox county court approving and confirming each of the settlements; that on October 19, 1927, he made a written settlement which was his final settlement as committee with the county court and it, together with the settlements made theretofore, included all of the assets which came into his hands as committee on behalf of his ward; that it was found by the final settlement that there was in the hands of the committee the sum of $5.67, the balance due his ward; that thereafter at a regular October term of the county court the final settlement was approved, confirmed, and ordered to record; that, having tendered his resignation, asking to be released as committee for the incompetent, his resignation was accepted, and he was released and discharged as committee and the First National Bank of Barbourville was appointed to succeed him; thereupon he paid to the First National Bank as committee the sum of $5.67, the balance shown to be due the ward by the settlement. He further alleged that by the order of the county court of Knox county made at its regular September term, 1927, the final settlement was filed, approved, and confirmed and ordered of record and that he, as committee, and his surety were discharged from further liability. He further alleged that the wife of Ennis Beddow, his mother-in-law, Martha Tuggle, and his father, William Beddow, being interested in the affairs of the incompetent, on October 6,

1925, filed in the county court a petition recommending the purchase of the tract of land at the price of $2,000 and asked that the court approve such sale; that, after evidence was furnished to the court as to the value of the land and the necessity for the sale thereof for the benefit of Ennis Beddow and his family and before the confirmation of the settlement, the court was advised as to the value and necessity of the purchase of the land; that at the time of the sale of the property there was a substantial well-built residence on the property, and that Ennis Beddow and his family occupied the residence and used the land for gardening and farming purposes and controlled same to and including the year 1934; that during the time the incompetent's family used and controlled the property, and after the resignation of J. F. Catron as committee, Ennis Beddow, with the knowledge, approval, and consent of J. F. Catron, as committee, moved the residence to another tract of land in the neighborhood where he and his family are now using and occupying same; that the purchase and sale of the land was for the benefit of Ennis Beddow and was made with the full approval and judicial determination of the Knox county court; that at the time of the sale and the approval of the settlement by the Knox county court the property was at a fair voluntary sale reasonably worth $2,000.

On final hearing, and after the depositions of a number of witnesses had been taken, it was adjudged that the petition be dismissed and plaintiff take nothing thereby and defendant recover his costs, and plaintiff is appealing.

It is argued in effect by counsel for appellant, as alleged in the petition, that the conveyance of the land by Catron to himself as committee was a violation and breach of duty and the trust imposed upon him as committee and a misappropriation of the funds of the ward to the extent of the purchase price and that the succeeding committee at its election may avoid the conveyance and recover the purchase price. Appellee relies upon the settlement and proceedings of the county court as alleged in his answer as a release of all liability; and further argues that under section 4706, Kentucky Statutes, the committee was authorized to invest funds of the ward in real estate and, there being evidence to

show the land was worth $2,000, the judgment should not be disturbed.

Prior to its amendment by chapter 13, Acts of 1934, sections 4706 of the Statutes did authorize fiduciaries to invest funds intrusted to their keeping as such in real estate; but that section of the statute, both before and since its amendment in harmony with the spirit of common law and a long-recognized public policy, required that investments by fiduciaries should be such as were regarded by prudent businessmen as safe.

In the case of Gee et al. v. Womack, 203 Ky. 718, 263 S. W. 6, 7, a guardian invested practically all of the funds of his ward in two adjacent pieces of real estate in Catlettsburg, one a vacant lot and the other a lot with a small residence upon it. The guardian who made the investment resigned without settling his accounts. His successors brought suit against him and the sureties on his bond for an accounting and for judgment for the amount due the wards. He sought credit upon settlement for the sums invested in the lots, but this was denied him in the circuit court, and on appeal the judgment was affirmed. After quoting section 4706 of the Statutes, it is said:

> "In construing this section, we have held that it is the duty of a trustee, no matter in what he invests the trust funds, to make in good faith such an investment as would be made by prudent business men with a view to securing a safe income for themselves and their families. [Citing authorities.]"

It was held in effect that a guardian should not invest the funds of his ward in nonproductive real estate. In Gee v. Womack, supra, the transaction was between the guardian and a third party; and it is manifest that, in enacting the section of the statute in question, the Legislature had in mind transactions between guardians and third parties, therefore, this case presents a phase not treated in the Gee Case and clearly not contemplated by the Legislature when the statute was enacted; that is, a fiduciary dealing with himself.

Addressing ourselves to that phase of the case, it is apparent from the evidence that, while the tract of land in controversy is adjacent to the city of Barbourville, it is not suited for building lots, because practi-

cally all of it is subject to overflow. A number of witnesses gave as their opinion that at the time Catron conveyed it to himself as committee it was worth about $2,000. The evidence on a whole in that particular is neither impressive nor convincing. While it is located near the river and subject to overflow, it is not of a fertile, loamy nature, but is low, wet and swampy and, as we gather from the evidence, is what is generally known as "crayfish" land. In the way of grasses or cover crop it will grow little else than swamp grass. Viewing the evidence in the most favorable light, the land is not well adapted to agricultural uses; and, considering that it was only improved with a small box house and that the committee deemed it necessary to and did expend over $500 in remodeling and repairing the house after the transfer, it is quite apparent that the price the committee paid himself was very substantial, if not in fact exorbitant.

There is in evidence a complete record of the bank account kept by the committee, and this does not show, nor does it otherwise appear in the record, that the committee actually paid himself the $2,000 as the recited consideration for the land. In fact, he never at any time had as much as $2,000 to his credit in the bank as committee; and after 1921 the balance to his credit as committee was usually less than $100 and only once exceeded $500, and then only by a few cents. There is no charge that the committee did not account for all funds coming into his hands when the purchase price of the land is taken into consideration. It is argued that the guardian chose this conveyance as a means of accounting for funds which had come into his hands and for which he was otherwise unable to account. From the bank account and other evidence it cannot be said that this argument is without foundation, and, to say the least, it is apparent that Mr. Catron deemed it to his interest to make the conveyance to himself as committee.

The same general principles apply to all persons occupying a fiduciary relationship in transactions of this character whether they be executors, trustees, guardians, or committee for an incompetent. In 12 R. C. L. p. 1169, it is said respecting the trust relationship between guardian and ward:

"In no relation, except perhaps that of parent

and child and husband and wife, are the elements of confidence on one side and active good faith on the other, more essential than in this. The ward is always a minor, and often so young as to be entirely dependent on his guardian. * * * The government itself is in a sense the supreme guardian whom the individual guardian represents in its solicitude for the welfare of the wards. Guardianship, therefore, is a trust of the highest and most sacred character. * * * Dealings of the guardian with the ward's estate must invariably be in the interest of the ward, and not of the guardian. Any transaction by which it appears that the guardian has made a gain for himself, other than his allowed compensation, is presumptively fraudulent, especially if by the same transaction the ward suffered a loss.''

This applies equally to a committee for a person of unsound mind and incompetent to manage his own estate.

In Mitchum's Heirs v. Mitchum's Administrators et al., 33 Ky. (3 Dana) 260, it is said:

"A trustee or executor (and in this respect an administrator occupies precisely the same grounds) 'is not permitted to raise in himself an interest opposite to that of the party for whom he acts; nor to traffic in the estate for his own emolument.' * * * The rule is not better established by authority, than it is salutary in its operation, and indeed, essential to the protection of those interests which are committed to executors and administrators. A Court of Equity, whose province it is to supervise the transactions of these fiduciaries, is bound to maintain, in its full extent, this important restriction, and to repress any evasion which threatens to violate the principle on which it is founded.''

That case was cited with approval in Faucett v. Faucett, 64 Ky. (1 Bush) 511, 89 Am. Dec. 639, and in the recent case of Petrey's Adm'r et al. v. Petrey, 262 Ky. 222, 90 S. W. (2d) 4, and in the Faucett Case it was further said:

"The doctrine is indisputably established, that a purchase made by a trustee or guardian of the trust property, or by an executor of the estate of his tes-

tator, from himself, during the continuance of the fiduciary character of the purchaser, will not be sanctioned or allowed to prevail, unless it be made under the authority of the court, or with the full concurrence and consent of the persons beneficially entitled to the property, who are competent to consent; and even then it will be regarded with suspicion.''

In Restatement of the Law of Trusts, sec. 170, it is said:

''A trustee is in a fiduciary relation to the beneficiary and as to matters within the scope of the relation he is under a duty not to profit at the expense of the beneficiary and not to enter into competition with him without his consent, unless authorized to do so by the terms of the trust or by a proper court. * * * The trustee violates his duty to the beneficiary not only where he purchases trust property for himself individually, but also where he has a personal interest in the purchase of such a substantial nature that it might affect his judgment in making the sale. Thus, a trustee violates his duty if he sells trust property to a firm of which he is a member or to a corporation in which he has a controlling or substantial interest. * * * It is immaterial that the trustee acts in good faith in purchasing the property for the trust, and that he pays a fair consideration. This is true whether he purchases for the trust property which he owns individually, or property owned by a firm of which he is a member, or property owned by a corporation in which he has a controlling or substantial interest.''

While authorities indicate that transactions of this character may be upheld if beneficial to the trust estate, it is generally held that they are voidable at the option of the ward or cestui que trust. See Faucett v. Faucett, supra, and other authorities hereinbefore cited.

There was in fact no action instituted seeking the approval of the conveyance from Catron to himself in trust for the incompetent. The wife and other relatives of the incompetent merely made a written request or recommendation which amounted to nothing more than a letter to the judge of the county court requesting ap-

proval of the transaction. If the transaction had been made under authority of court in an action in which the incompetent was properly before the court, it would still, as indicated in Faucett v. Faucett, supra, be "regarded with suspicion."

Courts should not only discourage the reprehensible practice of fiduciaries bartering in trust funds to their own emolument, but, by withholding sanction, should remove any temptation to allow greed and selfish interests to supplant fidelity, good faith, and honest dealing in the administration of trust funds.

It is contended by counsel for appellee that appellant was not entitled to recover because right of action had been barred by limitations, and the case of Cox v. Simmerman, 243 Ky. 474, 48 S. W. (2d) 1078, and other cases are cited, which held that although generally speaking limitations must be specifically pleaded and may not be raised by demurrer, a different rule prevails in actions for fraud brought more than five years after the action first accrued and in which circumstances the plaintiff must allege facts excusing the delay or he fails to state a cause of action. But in the case at hand there was neither a plea of limitations nor a demurrer to the petition, and if there had been, neither would have been available because it is revealed that at all times mentioned in the record, Ennis Beddow was under a disability which brings the case within specific exceptions to our statutes of limitations. See sections 2506 and 2525, Kentucky Statutes. In Turner v. Begley, 239 Ky. 281, 39 S. W. (2d) 504, it was held that in an action for the recovery of real property, the fifteen-year statute of limitations could not be applied against a person of unsound mind. See, also, Lackey v. Lackey, 47 Ky. (8 B. Mon.) 107, and Collins v. Lawson's Committee, 140 Ky. 510, 131 S. W. 262. In those cases the court dealt with actions referred to in section 2506; but the same principle would apply in actions mentioned in section 2525. In Fox v. Hudson's Ex'x et al., 150 Ky. 115, 150 S. W. 49, Ann. Cas. 1914A, 832, which was an action for fraud, it was recognized that section 2525 of the statute would apply where any of the disabilities mentioned therein existed at the time the cause of action accrued and continued; but it was held that the section had no application in that case because the disability occurred after the cause of action accrued. Exceptions to stat-

522

utes of limitations as set out in sections 2506 and 2525 apply to infants under guardianship. See 37 C. J. 1024. In Stewart v. Sims, 122 Tenn. 296, 79 S. W. 385, a guardian failed to turn over to his successor the funds of the ward, and the second guardian failed to take any action to recover the assets of the estate. It was held in effect that the minor might through a third guardian maintain an action to obtain the property, since a bill by the regular guardian was substantially a bill of the ward and that it was error to dismiss such action on the ground that it was barred by limitations because the statute did not apply to one under a disability of infancy. As has already been pointed out, the rule applies alike to the disability under which Ennis Beddow labored.

It is our conclusion that the chancellor erred in not granting appellant the relief sought except as to interest prayed for. Interest on the sum of $2,000 for something over eleven years would amount to more than $1,-300; but since the incompetent has had the use of the land and has removed a small building which was on it at the time of the conveyance and which it is claimed was worth over $400, it would be just and equitable to let interest be offset by the use of the property and the value of the building claimed to have been removed.

Wherefore the judgment is reversed for judgment in conformity with this opinion.