## Dance et al. v. Zumalt et al.

June 6, 1939.

J. G. Vallandingham, Judge.

42

C. C. Adams for appellants.

F. A. Harrison for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Mrs. Annie E. Zumalt died intestate in 1917 survived by her husband, George Zumalt, and seven children as her only heirs at law, viz.: Mrs. Corinne Z. Dance, Mrs. Mary Z. Ruby, Mrs. Annie Z. Crofford, Stanley Zumalt, Ira Zumalt, Clarence Zumalt and Jeannie Zumalt. At the time of her death she owned a tract of about 90 acres of land in Grant county. George W. Zumalt and the unmarried children continued to occupy the farm until February 29, 1935, when he died intestate, having never remarried. He left some personal estate including about $700 on deposit in a bank. A day or so after his death his children and heirs above named, in order to avoid costs and delay of administration, agreed that Stanley Zumalt should act as agent for the heirs in paying the debts of their deceased father out of the funds on deposit in the bank and distribute the remainder equally to the heirs, which has been done.

On March 16, 1936, Stanley Zumalt and his sister, Jeannie Zumalt, who were living with their father at the time of his death, as parties of the first part, entered into a contract with the other children of their deceased parents as parties of the second part, whereby the parties of the second part agreed to sell to the parties of the first part all their right, title and interest in the 90 acre tract of land and also all of the personal property owned by their deceased father for the sum of $2142.86, of which sum $5 in cash was paid to each of the second parties and the remainder was to be paid when the deed was executed and delivered in conformity with the contract on or before April 1, 1936. Each of the parties of the second part, however, reserved the right to select a ''keepsake'' from the household goods. The respective husbands and wives of the second parties joined in the contract.

On July 28, 1936, Mrs. Corinne Dance and her husband, Mrs. Mary Ruby and husband, and Mrs. Annie Crofford and husband, instituted this action against Stanley Zumalt and Jeannie Zumalt, Ira Zumalt, and his wife, and Clarence Zumalt and his wife, seeking a sale of the land of their deceased mother and for a division of the proceeds among the parties in interest alleging that each of the children owned an undivided one-seventh interest therein. They also asked to recover rentals for the use, occupancy and possession of the land by defendants.

By answer, counterclaim and cross-petition, Stanley Zumalt set up the contract hereinbefore referred to and alleged that ever since the execution thereof and on April 1, 1936, they were ready, able and willing and still are ready, able and willing to pay to the plaintiffs the balance of the purchase price for the land, but that the parties of the second part had failed and refused to convey the land to them under the terms of the contract. They asked for specific performance of the contract and that the parties of the second part be required to make and deliver to them a deed.

By reply plaintiffs alleged that the contract was procured by ''force, fraud, duress, misrepresentations, misstatements and undue influence brought to bear and practiced upon them by the answering defendants by which they were misled, overreached and so completely overthrown in reason, poise and sense that they did not

fully appreciate the contents and nature of the writing nor the force and effect thereof," etc.; that the consideration recited in the contract was false and that they were to be paid a sum far in excess of that amount. They asked that the contract be declared void and without any binding force and effect; and that defendants be required to surrender it for cancellation and rescission and that they be granted the relief sought in their petition.

The issues were completed by a rejoinder traversing the allegations of the reply. On final hearing it was adjudged that the contract set up in the answer, counterclaim and cross-petition was not procured by fraud or duress but that same was entered into voluntarily and with complete understanding of its terms by the parties thereto and that it is binding and in full force and effect; that the plaintiffs' petition be dismissed and that defendants recover their costs; that the plaintiffs had refused to convey the property to the defendants, Stanley and Jeannie Zumalt and that the master commissioner of the court convey the three-sevenths undivided interest of plaintiffs to the defendants, Stanley and Jeannie Zumalt, upon payment by the grantees of the sum of $1285.71 representing three-sevenths of the purchase price of the land owing under the terms of the contract and that he distribute same to the plaintiffs in accordance with their several interests. Plaintiffs are appealing. Ira Zumalt and Clarence Zumalt had voluntarily conveyed their interests to appellee and raised no question about the validity of the contract, and they were therefore made parties defendant.

As grounds for reversal it is argued in substance that by reason of appellees' joint ownership, their occupancy of the property prior to and after the death of their mother, their relation to the other parties, the quasi-fiduciary capacity of Stanley Zumalt as agent chosen by the heirs and the confidence and trust thereby imposed in him, the burden was upon him and his sister, Jeannie Zumalt, to show complete fairness and bona fides of the contract on which they relied and the cases of Whittle's Adm'r v. Whittle, 264 Ky. 632, 95 S. W. (2d) 287 and Hanna et al. v. Eiche, 258 Ky. 282, 79 S. W. (2d) 950, are cited. The first case sets out the general and well recognized doctrine that where a confidential relationship exists, one attempting to uphold a contract which is questioned, has the burden of proving

complete fairness of the transaction; and in the latter case it is held in effect that a transfer of property by persons mentally or physically sick and infirm to those having custody of them are regarded with suspicion and casts upon the latter the burden of showing the bona fides and fairness of the transaction. But the evidence in this case falls far short of showing such a confidential relationship as would shift the burden of proof. Appellants were not advanced in years, did not live with nor were any of them under the custody, control or dominion of appellees or in any way dependent upon them, but upon the other hand they lived with their husbands and families on other farms; and none of them were so mentally or physically infirm as to render them incapable of transacting business. Appellants had been reared on their mother's farm and had lived in the community after their marriage; they had the same opportunity as appellees of knowing the value of the farm and the amount, character and nature of the personal estate. Nothing in that respect was or could have been misrepresented to them. They claimed and testified that Stanley Zumalt agreed to pay the second parties to the contract $3000 for the land and other property; but he and his sister Jeannie testified, as did their brothers and some disinterested witnesses, that appellees agreed to buy the property on a basis of $3000 which would include their one-seventh undivided interest each, and that on that basis the aggregate amount due the other heirs was the sum set forth as the consideration in the contract. The evidence also shows that the contract was prepared by an attorney, was read to and signed by all of the parties who were present and on the following day or later was taken to and was signed by other parties and their husbands. Two of the sisters attempted to show that they were procured to sign the contract through duress and fear. The evidence shows that some of the sisters proposed that appellees buy the farm and that the matter had been discussed at the home of Mrs. Dance. Stanley Zumalt made the proposition to buy the farm and the personal property, but it seems that at some time during the negotiations Mrs. Ruby indicated that she would not sign the contract because Stanley had not made a full disclosure concerning some of the personal property or had "smuggled" some of it. Stanley and others testified that he told her that if she meant to intimate he had stolen any of the property she was a liar and that if she were a man he would whip her. Both

she and Mrs. Dance testified that he cursed and abused them, assumed a threatening and menacing attitude and indicated that he would beat them; that they in fear that he would do them harm agreed that they would sign anything. Stanley Zumalt and others who were present testified that he did not curse or abuse them or threaten to do them any violence. The evidence does tend to show that Mesdames Dance, Ruby and Crofford, as well as Stanley and Jeannie Zumalt, are inclined to be nervous, querulous and high tempered and that they did have a family row during which some of the women were crying and wringing their hands. When the quarrel started a grown son of Mrs. Dance was present and other men not related to the parties were there; however, they went out during the progress of the quarrel. The fury of the parties soon abated and apparently everything became serene, since, later in the day, the parties went to Williamstown where the contract was drafted and part of them signed it without any show or demonstration of nervousness or fear and on the following day, according to the agreement between the parties, they met at the old home and selected their "keepsake." The evidence indicates that appellants were as well versed in business matters and as able to take care of themselves in a transaction as were appellees and the contention that any of them were under duress or fear when they signed the agreement is not in accord with the weight of the evidence and the proven facts and circumstances.

It is argued in brief that the consideration recited in the contract is so inadequate as to indicate the correctness of appellants' contention but there is a sharp conflict in evidence on that point. A number of witnesses who live near and were acquainted with this farm and with farm values in Grant County testified that it was not worth over $2000. A number of witnesses for appellant put a greater value upon it, some testifying that it was worth $3000. The overwhelming weight of evidence is to the effect that the personal estate of George Zumalt involved was worth less than $1000. While there is some conflict in evidence it will be seen that appellants' contention of inadequate consideration does not find sufficient support in evidence.

As has often been said by this court, a presumption of innocence, good faith and fair dealing attends upon all lawful transactions between men. Therefore one

who asserts fraud, actual or constructive, in avoidance of his contract, has the burden of establishing his accusation. It is true that in circumstances such as referred to in Hanna et al. v. Eiche, supra, or where a transaction is attended by badges of fraud, the burden shifts to the one relying upon the contract to rebut inferences arising therefrom and to show the bona fides of the transaction. See Magic City Coal & Feed Co. v. Lewis, 164 Ky. 454, 175 S. W. 992, and cases therein cited. No circumstances are shown here that would relieve appellants of the burden of sustaining their allegation of fraud, etc., and proof to avoid a contract must be strong, clear and convincing.

It is further argued in substance that because Stanley Zumalt was chosen as agent by the heirs to distribute the money of deceased on deposit in the bank, his contract to purchase the land and personal property from the heirs was voidable and the cases of Conrad v. Conrad, 152 Ky. 422, 153 S. W. 740, and First State Bank of Pineville v. Catron, 268 Ky. 513, 105 S. W. (2d) 162, are cited, but these cases deal with transactions whereby the guardian, trustees or other person in a fiduciary capacity bartered in the estate to their personal gain or emolument and such transactions have always come under the condemnation of the court; but in this instance Stanley Zumalt was merely chosen by the heirs to make distribution of the cash in the bank. He had nothing more to do with the settlement and disposition of the real estate or other personal property than did any of the other heirs and clearly the cases relied on have no application.

It is our conclusion that the chancellor's finding is sustained by a preponderating weight of the evidence.

Judgment affirmed.